OPINION
{¶ 1} Defendant-Appellant, Dale Edward King, appeals the judgment of the Marion Municipal Court, convicting him of obstructing official business, sentencing him to ninety days in jail, and ordering him to pay a four hundred dollar fine. On appeal, King asserts that he did not waive his right to a speedy trial; that the trial court erred in allowing a law enforcement officer to give an expert opinion about his credibility; that the trial court erred by denying his Crim.R. 29 motion for judgment of acquittal; that the jury's verdict was against the manifest weight of the evidence; and, that the trial court erred and/or abused its discretion by sentencing him excessively. Based on the following, we reverse King's conviction and remand the matter for further proceedings consistent with this opinion.
 {¶ 2} On June 21, 2005, King was charged with complicity to theft in violation of R.C. 2923.03, a misdemeanor of the first degree, and obstructing official business in violation of R.C. 2921.31, a misdemeanor of the second degree.
 {¶ 3} On July 5, 2005, King pled not guilty to both charges and the trial court scheduled a pretrial conference for July 20, 2005.
 {¶ 4} At the July pretrial conference, King requested an appointment of counsel, and the parties agreed to reschedule the pretrial conference for August 8, 2005. Subsequently, the court appointed an attorney to represent King.
 {¶ 5} On July 22, 2005, the trial court tolled the computation of time for speedy trial purposes from July 20, 2005 to August 8, 2005.
 {¶ 6} On August 8, 2005, King's counsel filed a "Waiver of Time" on behalf of King, waiving the time requirements for which a trial must be held under R.C. 2945.71. The "Waiver of Time" did not specify its duration, and it is undisputed that King did not sign it.
 {¶ 7} On August 19, 2005, King's counsel also filed a "Time Waiver and Jury Demand" without specifying the duration of the time waiver, and it is undisputed that King did not sign it. Subsequently, the trial court scheduled a jury trial for October 19, 2005.
 {¶ 8} On October 19,2005, King's counsel requested a continuance due to family circumstances and formally filed a motion for continuance on October 21, 2005, which the trial court granted. In addition to moving for a continuance, the motion also provided that King "has previously voluntarily waived his right to trial within the time provided by law" and that "in the event this Motion is granted, [King] is willing to knowingly and voluntarily waive his right to trial within the time provided by law, if he has not done so before." (Motion for Continuance, ¶¶ 3-4).
 {¶ 9} Subsequently, the trial was rescheduled for December 7, 2005. However, on December 6, 2005, the trial court, at King's request, converted the trial into a final pretrial hearing in order to allow the parties to discuss a possible settlement. The trial was rescheduled for February 1, 2006.
 {¶ 10} On February 1, King submitted a letter to the court,[1] which provided that he had learned from an "outside source" that his counsel had "filed for a continuance and waived his rights to full jury" without his permission or signature; that his counsel was working "in alliance with the prosecution"; and, that all documents filed without his signature were not authentic and done solely "to do harm." (King Letter, pp. 1-2). King also requested new counsel. The trial court appointed new counsel and scheduled a pretrial conference for February 8, 2006.
 {¶ 11} On February 8, 2006, King's newly appointed counsel explained that the State had offered King a plea bargain in exchange for a no contest plea to the obstructing official business charge, but that King had declined the offer and requested that the case proceed to a jury trial.[2] The following exchange then occurred:
 The Court: Has time previously been waived, or. . . [King's Counsel]:
 Apparently [King] did not approve the waiver of time * * * . It was filed by his previous attorney. I have no knowledge of, you know, all that went down. I know [King] made a record of that, that he did object to the Court not, or you know, taking the time waiver. So that's an issue I guess. That's with his other counsel. Ah, at the present time, you know, the Court has found that the time was waived. It was filed that way by previous counsel. So, uhm, I think [King] has an issue with that. * * * [King] did, uhm, appeared (Sic.) here prior to February 1st, attempted to speak with the Judge about his problems, but she declined to do. He did place that on the record that he was here, that he did try to raise the issue before. He also filed a letter, I would call it, probably accepted as some type of motion on [February 1], 2006, also outlining some of the problems he has with [previous counsel] and certain. . . The Court: It looks like the Court has already ruled on all of that so, I don't think there is anything that we need to do at this time.
(Pretrial Conference Tr., pp. 3-5).
 {¶ 12} On March 1, 2006, King moved to dismiss the charges against him based on a violation of his right to a speedy trial under R.C.2945.71(B)(2) and requested a hearing on the matter, which was scheduled for March 16, 2006.
 {¶ 13} However, on March 10, 2006, the trial court issued a "Ruling on Defendant's Motion to Dismiss", denying King's motion to dismiss. Based on the Ohio Supreme Court's holding in State v. McBreen (1978),54 Ohio St.2d 315, the trial court found that King was bound by both the August 8th and August 19th time waivers filed by his previous counsel, even though he did not consent to them.
 {¶ 14} On March 16, 2006, the trial court proceeded with the hearing on King's motion to dismiss. At the hearing, King testified that he did not waive his right to a speedy trial at either the July 5, 2005 arraignment or the July 20, 2005 pretrial conference. King stated that the State asked him to sign a time waiver at the July 2005 pretrial conference, but that he declined because he did not know if his "[future] attorney would want [him] to do that." (Hearing Tr., p. 11). King also indicated that he never signed any time waivers, authorized any time waivers, or discussed any time waivers with his previous counsel and that no one advised him that his right to a speedy trial was being waived.
 {¶ 15} King further testified that previous counsel did not inform him of any time waivers until December of 2005, at which time he learned "that [his] rights to a speedy trial had been waived by [his previous counsel] because his family member was sick or something and I asked, why didn't you notify me? I mean he has an office where other attorneys work. It didn't, it didn't make sense to me why he would do that." (Hearing Tr., p. 12). King explained that he then attempted to protest his previous counsel's conduct by going to the courthouse on or about December 7, 2005, and telling a judge that he had "problems," but that the judge informed him that she could not answer any legal questions. (Hearing Tr., p. 13). Thereafter, King stated that he wrote the letter filed with the court on February 1, 2006.
 {¶ 16} Following the hearing, the trial court again denied King's motion to dismiss, finding that speedy trial time had been effectively waived based on the reasoning put forth in its March 10, 2006 ruling on King's motion to dismiss.
 {¶ 17} On March 29, 2006, the case proceeded to trial. At the trial, the following testimony was adduced by the State:
 {¶ 18} First, Jennifer Myers, a cashier at Sears, testified that she was working at Sears on June 14, 2005. Myers stated that she observed a young black female carrying a black purse enter Sears and proceed to the children's department located in the back of the store. The female brought some clothing to the sales counter and inquired about pricing. At that point, Myers noticed that the female had a Sears diaper bag over her shoulder. Myers continued that the female informed her that she was waiting for her mother to arrive to purchase the clothing, but that "the next thing I know, I turned my head and [the female] was going out the door" with the diaper bag. (Trial Tr., p. 164). Myers stated that she followed the female outside to try to recover the diaper bag, and observed her walk to a dark colored track parked in the second or third parking spot from the store, go around to the right side of the track, open the passenger door, get in the track, and ride out of the parking lot. Myers recounted that the track was driven by a black male; that she was standing directly behind the track as it was being driven away; that she was able to retrieve the track's license plate number; that she was positive the female got into the same track from which she retrieved the license plate number; but, that she did not see the driver's face. When Myers went back inside Sears, she and her co-workers found empty hangers and merchandise tags in the area of the store the female had occupied, including a tag from a diaper bag. Myers also indicated that she gave a verbal and written statement regarding the incident to the police.
 {¶ 19} Next, Linda Reese, an assistant sales manager of Sears, testified that she was working on June 14, 2005, and observed a young black female emerge from the children's department with a Sears diaper bag; that she believed the female was going to purchase the diaper bag; that she called the counter phone to inform Myers to check the bag for any items that may have been inadvertently placed inside; and, that the female left the store with the diaper bag without purchasing it. Reese continued that she observed Myers follow the female out of the store; that when Myers returned they found merchandise tags in the children's department; and, that she recorded the license plate number Myers dictated to her on the diaper bag tag that they found. Reese also noted that a review of the store's security camera videotape indicated that the female came into the store carrying a black purse and left carrying the purse and a diaper bag. Reese also indicated that she gave the videotape and a written statement to the police.
 {¶ 20} Finally, Deputy Jason Dutton of the Marion County Sheriffs Office testified that he was dispatched to Sears on June 14, 2005, to investigate a possible theft. Deputy Dutton stated that, after he arrived at Sears, he spoke with Myers and Reese, took formal statements from them, watched the security camera videotape, and took the diaper bag tag and videotape into evidence.
 {¶ 21} Deputy Dutton testified that Myers had described the track as an older Dodge track. Deputy Dutton continued that the license plate number recounted by Myers was registered to King at 1072 Wilson Avenue in Marion. Deputy Dutton proceeded to the Wilson Avenue address, where he observed an older Dodge track matching the description and license plate number given by Myers parked outside. Deputy Dutton continued that he then initiated contact with King, asked him whether anyone else had been driving the track that day, and informed him that he was investigating a theft from Sears, where an unknown female subject was last seen getting into the track parked outside his residence; that King admitted that he was the only person who had driven the track that day, but stated that he had not been to Sears; that he told King that witnesses saw a female get into a track matching the description and license plate number of his track and had noticed that the track was driven by a person matching his description; and, that King then recalled that he was not at Sears, but that he had driven "through Sears' parking lot approximately at the exact same time that this theft had occurred." (Trial Tr., p. 224).
 {¶ 22} Deputy Dutton recalled that he further questioned King about the witnesses' statements:
 Like I said, he first told me it was not possible and then he remembered that he did stop and got flagged down by a black female approximately the same time this occurred and at that point, I told him, you know, he claimed he did not pick anybody up and I said we got witnesses that saw a girl, lady open up your truck door and get in and drive off. At that time he said, she did open up the truck door. When I was giving her directions, she couldn't hear me. There was a communication barrier or something and so she opened up the truck door. She never got in.
(Trial Tr., pp. 224-25). Deputy Dutton testified that he then told King that his story was inconsistent; that King was not telling the truth; that he would give King the opportunity to tell him who he picked up at Sears; and, that if King refused, he was going to charge King with obstructing official business and complicity of theft. Deputy Dutton stated that King responded that he could do what he had to do. Deputy Dutton then requested a summons on June 15, 2005, charging King with complicity to theft and obstructing official business.
 {¶ 23} Additionally, the State asked Deputy Dutton if he had formed a personal opinion, based on his training and experience as a law enforcement officer, on whether King was being truthful in his responses to Deputy Dutton's questions, to which King objected. The trial court overruled the objection, and Deputy Dutton answered that his opinion was that King "was dishonest with me from the get go" given King's original denial that he had been at Sears, his later recollection that he had driven through the parking lot but had not stopped, his admission that he did stop because a female flagged him down but she did not get in the track, and his subsequent admission that she did open the door but did not get in the track. (Trial Tr., p. 227).
 {¶ 24} On cross-examination, Deputy Dutton admitted that he had already obtained the diaper bag tag and witness statements and had already watched the security camera videotape before proceeding to King's address; that he did not obtain a written statement from King or tape record his questioning of King; that King had a right not to divulge any information; that King's responses did not lead him to investigate further; and, that King hampered the investigation by not telling him the identity of the female subject.
 {¶ 25} On redirect examination, Deputy Dutton testified that if King had identified the female subject, he would have proceeded to locate her, interview her, compare her appearance to that of the female on the videotape, and attempt to retrieve the diaper bag from her.
 {¶ 26} After Deputy Dutton testified, the State rested, and King moved for acquittal on both counts under Crim. R. 29, which the trial court denied. King did not present any testimony or evidence.
 {¶ 27} At the conclusion of the trial, the jury found King not guilty of the complicity charge, but guilty of the charge of obstructing official business. Thereafter, the trial court sentenced King to ninety days in jail and ordered him to pay a four hundred dollar fine, but suspended sixty five days of jail time and two hundred fifty dollars of the fine on the condition that King "obey the laws of the State of Ohio and its subdivisions for a period of two years." (March 30, 2006, Judgment Entry).
 {¶ 28} It is from this judgment that King appeals, presenting the following assignments of error for our review.
 Assignment of Error No. I APPELLANT'S RIGHT TO BE BROUGHT TO LAW WITHIN THE TIME LIMITS IN R.C. 2945.71 WAS NOT WAIVED BY HIS TRIAL COUNSEL'S SIGNATURE ON DOCUMENTS WITHOUT APPELLANT'S PERMISSION.
 Assignment of Error No. II THE TRIAL COURT ERRED IN ALLOWING A LAW ENFORCEMENT OFFICER TO GIVE AN EXPERT OPINION ON THE CREDIBILITY OF APPELLANT.
 Assignment of Error No. Ill THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL.
 Assignment of Error No. IV THE JURY'S GUILTY VERDICT OF OBSTRUCTING OFFICIAL BUSINESS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 Assignment of Error No. V THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION WHEN IT GAVE APPELLANT AN EXCESSIVE SENTENCE.
 Assignment of Error No. I {¶ 29} In his first assignment of error, King contends that he did not waive his right to be brought to trial within the time limits in R.C.2945.71 because his counsel signed documents waiving his speedy trial rights without his permission. Specifically, King asserts that the October motion for a continuance which incorporated a time waiver did not effectuate a time waiver because the continuance was based on previous counsel's personal situation, rather than trial preparation purposes as required by the Supreme Court in State v. McBreen (1978),54 Ohio St.2d 315. Additionally, King asserts that his February 1, 2006 letter revoked any time waivers. We disagree.
 {¶ 30} Our standard of review upon an appeal raising a speedy trial issue is to count the expired days as directed by R.C. 2945.71, et seq.State v. DePue (1994), 96 Ohio App.3d 513, 516; see also State v.West, 3rd Dist. No. 2-06-04, 2006-Ohio-5834; Cleveland v. SeventeenthStreet Ass `n, 8th Dist. No. 76106, 2000 WL 426553. If any ambiguity exists, we construe the record in favor of the accused. State v.Mays (1996), 108 Ohio App.3d 598, 609; State v. Mitchell (1991), 8th Dist. No. 76106, 1991 WL 106037.
 {¶ 31} The applicable statutory speedy trial provision, R.C.2945.71(B)(2), provides that a person charged with a first or second degree misdemeanor shall be brought to trial within ninety days after the person's arrest or the service of summons.
 {¶ 32} Further, R.C. 2945.73(B) provides:
 Upon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code.
R.C. 2945.71 and R.C. 2945.73 are "mandatory and must be strictly complied with by the State." State v. Pudlock (1975), 44 Ohio St.2d 104,105, citing State v. Gray (1964), 1 Ohio St.2d 21 and State v.Cross (1971), 26 Ohio St.2d 270. However, R.C. 2945.72 allows for an extension of the time that the accused must be brought to trial under certain circumstances.
 {¶ 33} In the case sub judice, the ninety day time period within which King must have been brought to trial for speedy trial purposes began running on June 21, 2005, when he was served with the summons and complaint.[3] R.C.
2945.71(B)(2). King's trial did not commence until March 29, 2006, well outside the ninety day time limit under R.C. 2945.71(B)(2). Thus, absent an allowable extension under R.C. 2945.72, King's right to a speedy trial appears to have been violated.
 {¶ 34} One such extension, R.C. 2945.72(H), is pertinent to the facts before us. R.C. 2945.72(H) allows for an extension of time for speedy trial purposes during the "period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion." R.C. 2945.72(H). If an accused waives his right to a speedy trial, the waiver must be "expressed in writing or made in open court on the record" to be effective. State v. King (199'4), 70 Ohio St.3d 158, 161.
 {¶ 35} Here, King's previous counsel filed a written "Waiver of Time" and a "Jury Demand with Time Waiver" with the trial court on August 8 and August 19, 2005, respectively. At the time of the first time waiver, only twenty nine days had elapsed for speedy trial purposes as computed from the June 21, 2005 service of summons to the July 20, 2005 pretrial conference. At that point, the trial court tolled the time between the July pretrial conference and the August 8, 2005 pretrial conference. Although King asserts that his lack of consent invalidated the August time waivers, the Ohio Supreme Court has held that "a defendant's right to be brought to trial within the time limits expressed in R.C. 2945.71
may be waived by his counsel for reasons of trial preparation and the defendant is bound by the waiver even though the waiver is executed without his consent." State v. McBreen (1978), 54 Ohio St.2d 315, 320.
 {¶ 36} King attempts to distinguish McBreen from the facts in this case by arguing that his previous counsel moved for a continuance based upon personal reasons, rather than trial preparation purposes as required by the Supreme Court in McBreen. However, in making this argument King focuses solely on the October 19, 2005 continuance and ignores the August time waivers. Given that a written waiver had already been filed in August, we need not determine whether King's previous counsel's basis for the October continuance constituted "trial preparation" in satisfaction of McBreen[4] Therefore, we find that the August 8, 2005 time waiver, reiterated by the August 19, 2005 time waiver, effectively waived King's right to a speedy trial under R.C.2945.71.
 {¶ 37} Alternatively, King asserts that the filing of his letter on February 1, 2006, revoked any time waivers. Where, as here, a defendant files an "express written waiver of unlimited duration," the defendant is not entitled to a discharge for a violation of his right to a speedy trial "unless the [defendant] files a formal written objection to any further continuances and makes a demand for trial, following which the state must bring him to trial within a reasonable time." State v.O'Brien (1987), 34 Ohio St.3d 7, 9.
 {¶ 38} King's letter, which indicated his lack of consent to the time waivers and accused his previous counsel of attempting to do harm to him, did not object to further continuances or make a demand for trial so as to reinstitute the running of speedy trial time. Thus, we find that King's letter did not constitute a revocation of either the August 8, 2005 time waiver or the August 19, 2005 time waiver.
 {¶ 39} Moreover, even if we were to construe King's letter as a valid objection and revocation of the August 8, 2005, time waiver, the ninety day time period within which King must have been brought to trial had not yet expired, as the waiver would have been effective until the filing of the letter on February 1, 2006. Thus, from the February 1, 2006, filing of King's letter to his March 1, 2006, motion to dismiss, twenty-eight days elapsed for speedy trial purposes. At that point, King's filing of the motion to dismiss tolled speedy trial time until the March 16, 2006, hearing and ruling on the motion to dismiss. See R.C. 2945.72(E) (providing for extension of time due to "any period of delay necessitated by reason" of the accused's own motion); State v.Walker (1974), 42 Ohio App.2d 41, 43 (defendant's filing of motion to suppress extended speedy trial time); State v. Szorady, 9th Dist. No. 02CA008159, 2003-Ohio-2716 (speedy trial time tolled from date defendant filed motion to dismiss to date trial court denied motion). Thereafter, from the March 16, 2006, hearing and ruling on King's motion to dismiss to King's March 29, 2006 trial, an additional thirteen days elapsed. The combined total of the twenty-nine days that had elapsed between June 21, 2005, and July 20, 2005, the twenty-eight days between February 1, 2006, and March 1, 2006, and the thirteen days between March 16, 2006, and March 29, 2006, amounts to seventy days that elapsed for speedy trial purposes. This amount is well within the ninety day period required under R.C. 2945.71(B)(2). Therefore, we find that, regardless of whether King's February letter constituted a valid revocation of the prior time waivers, his right to a speedy trial under R.C. 2945.71 was not violated.
 {¶ 40} Accordingly, we overrule King's first assignment of error.
 Assignment of Error No. II {¶ 41} In his second assignment of error, King contends that the trial court erred in allowing a law enforcement officer to give an expert opinion on his credibility during the trial. Specifically, King asserts that Deputy Dutton's testimony was the only evidence presented regarding the obstructing official business charge and that allowing him to give an expert opinion on King's credibility was contrary to law and highly prejudicial.
 {¶ 42} The State responds that Deputy Dutton's testimony was lay testimony, not expert testimony; that the trial court properly admitted Deputy Dutton's opinion testimony regarding King's truthfulness because it derived from Deputy Dutton's direct perceptions during his questioning of King and because it was helpful to the determination of a fact in issue; and, that any error in admitting his opinion testimony regarding King's truthfulness was harmless.
 {¶ 43} We note at the outset that King has mischaracterized Deputy Dutton's opinion testimony as expert testimony. A review of the trial transcript indicates that the State made no attempt during the trial to establish Deputy Dutton's testimony as that of an expert, and the trial court made no acknowledgment of Deputy Dutton as an expert witness.[5]
To the contrary, the State merely asked Deputy Dutton to give his personal opinion regarding King's truthfulness based on his personal training and experience as a law enforcement officer. Thus, we find that Deputy Dutton's testimony regarding King's truthfulness was a lay opinion, and review the admittance as such.
 {¶ 44} A trial court has broad discretion to determine the admissibility of lay witness opinion testimony. State v. Auerbach
(1923), 108 Ohio St. 96, 98; State v. Cooper (1985), 3d Dist. No. 8-84-31, 1985 WL 7217. Accordingly, a reviewing court will not disturb a trial court's determination on the admissibility of lay witness opinion testimony absent an abuse of discretion. Auerbach, 108 Ohio St. at 99. An abuse of discretion connotes more than an error in law or judgment; it suggests that a decision is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219;State v. Adams, 62 Ohio St.2dl51, 157-58.
 {¶ 45} However, the erroneous admission of lay opinion testimony "does not give rise to grounds for reversal where the opinion testimony was not [unfairly] prejudicial to the defendant or where the opinion testimony did not [unfairly] bias the jury against the defendant."State v. Quails, 3d Dist. No. 9-01-07, 2001-Ohio-2296, citingCooper, supra; see, also Crim.R. 52(A) ("any error * * * which does not affect substantial rights shall be disregarded").
 {¶ 46} With regards to testimony about another's credibility, it is well settled that "it is the fact-finder, and not the so-called expert or lay witnesses, who bears the burden of assessing the credibility and veracity of witnesses." State v. Boston (1989), 46 Ohio St.3d 108, 128
[modified on other grounds by State v. Dever (1992)], 64 Ohio St.3d 401, quoting State v. Eastham (1988), 39 Ohio St.3d 307, 317; State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of syllabus (credibility of witnesses is a matter primarily reserved for the trier of fact).
 {¶ 47} However, a lay witness may testify about the credibility of an accused under limited circumstances, such as where an accused first "opens the door" to such questioning, State v. Jackson (2000), 8th Dist. No. 76141, 2000 WL 426556, or where an accused challenges the investigation procedure of the police. In re Shubutidze (2001), 8th Dist. No. 77879, 2001 WL 233400.
 {¶ 48} In the case sub judice, Deputy Dutton's opinion testimony that King was "dishonest" with him "from the get go" clearly involved an assessment of King's credibility and should not have been admitted absent the occurrence of one of the limited circumstances described above.
 {¶ 49} Here, King neither testified nor presented any evidence at the trial. Additionally, King never challenged Deputy Dutton's investigation procedure on cross-examination. Consequently, King did not first "open the door" for testimony about his credibility or question Deputy Dutton about his investigation procedure in such a manner as to warrant testimony about King's credibility. Thus, we find that the trial court's admission of Deputy Dutton's testimony regarding King's credibility was inappropriate and an abuse of discretion.
 {¶ 50} Despite the trial court's abuse of discretion in admitting Deputy Dutton's testimony regarding King's credibility, we cannot reverse King's conviction on this ground unless the error unfairly prejudiced him. Quails, 2001-Ohio-2296; Cooper, supra.
 {¶ 51} Here, we cannot find that Deputy Dutton's opinion testimony regarding King's credibility was unfairly prejudicial. Although Deputy Dutton's testimony was the only evidence presented by the State on the obstruction of official business charge, Deputy Dutton had already described King's inconsistent responses to his questioning before he stated his belief that King had been dishonest. Moreover, Deputy Dutton also testified that King obstructed official business by refusing to give him the name of the female subject. Thus, the jury could have relied upon Deputy Dutton's description of King's inconsistencies during questioning, or upon his testimony that King's failure to provide the female subject's name interfered with the investigation, rather than on Deputy Dutton's assessment of King's credibility, in convicting King of obstructing official business. Therefore, while we condemn the trial court's admittance of Deputy Dutton's testimony regarding King's credibility as an improper invasion on the role of the jury, we find that such testimony did not unfairly prejudice King based on the facts of this case.
 {¶ 52} Accordingly, we overrule King's second assignment of error.
 Assignment of Error No. Ill {¶ 53} In his third assignment of error, King contends that the trial court erred in failing to grant his Crim.R. 29 motion for judgment of acquittal. Specifically, King argues that the State failed to prove that he committed an affirmative act that substantially hampered or impeded Deputy Dutton's performance of his duties as required under R.C.2921.31(A).
 {¶ 54} A motion for acquittal under Crim.R. 29(A) is governed by the same standard as one for determining whether a verdict is supported by sufficient evidence. See State v. Carter, 72 Ohio St.3d 545, 553,1995-Ohio-104; State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52. An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, superseded by state constitutional amendment on other grounds in State v. Smith (1997), 80 Ohio St.3d 89, 1997-Ohio-355.
 {¶ 55} Crim.R. 29(A) provides:
 Motion for judgment of acquittal. The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.
Under Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. State v. Bridgeman (1978),55 Ohio St.2d 261. A motion for acquittal tests the sufficiency of the evidence. State v. Miley (1996), 114 Ohio App.3d 738, 742. Sufficiency is a test of adequacy, Thompkins, 78 Ohio St.3d at 386, and the question of whether evidence is sufficient to sustain a verdict is one of law.State v. Robinson (1955), 162 Ohio St. 486, superseded by state constitutional amendment on other grounds in Smith, 80 Ohio St.3d 89,1997-Ohio-355.
 {¶ 56} R.C. 2921.31 defines the offense of obstruction of official business, providing, in pertinent part:
 No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.
R.C. 2921.31(A). Courts have interpreted R.C. 2921.31(A) as requiring the State to prove three elements to obtain a conviction for obstructing official business: (1) the defendant engaged in an unprivileged affirmative act, (2) the defendant committed the act with the purpose or intent to hamper or impede the performance of a public official, and (3) the act did, in fact, substantially hamper or impede the official in the performance of his or her duties. Matter of Pribanic (1991), 6th Dist. No. E-90-20, 1991 WL 3813; State v. Pitts (1986), 31 Ohio Misc.2d 10,12.
 {¶ 57} With regard to the third element,[6] King argues that the State failed to show that he committed an affirmative act that substantially hampered or impeded Deputy Dutton's performance of his official duties because he had no obligation to provide Deputy Dutton with the female subject's name, and because his responses to Deputy Dutton's questioning did not hamper or impede Deputy Dutton's investigation. The State responds that King's refusal to provide truthful information during questioning impeded Deputy Dutton's investigation because Deputy Dutton would have been able to identify and interview the female subject if given the information.
 {¶ 58} In general, the offense of obstructing official business requires the doing of some affirmative act by a defendant. State v.Muldrow (1983), 10 Ohio Misc.2d 11. Accordingly, a person cannot be guilty of obstructing official business by doing nothing or by failing to act. Hamilton v. Hamm (1986), 33 Ohio App.3d 175; Columbus v.Michel (1978), 55 Ohio App.2d 46. Examples of such failures to act which do not constitute affirmative acts encompassed under R.C. 2921.31(A) include the refusal to be fingerprinted as part of the ordinary identification process by police, Muldrow, 10 Ohio Misc.2d 11, the failure to sign an agreement to pay a fine and costs, Hamm,33 Ohio App.3d 175, the failure to respond to an officer's request to open the door, Michel, 55 Ohio App.2d 46, and the refusal to disclose one's name to a police officer. State v. Collins (1993), 88 Ohio App.3d 291, overruled on other grounds by State v. Tolliver (1996), 2d Dist. No. 15184, 1996 WL 715438; Dayton v. Peterson (1978), 56 Ohio Misc. 12.
 {¶ 59} Conversely, the making of an unsworn oral false statement to a public official may be punishable conduct under R.C. 2921.31(A).[7]State v. Bailey, (1994), 71 Ohio St.3d 443; State v. Lazzaro,76 Ohio St.3d 261, 1996-Ohio-397. However, giving an unsworn oral false statement to a public official with the intent to hamper or impede the official's performance, by itself, does not constitute obstracting official business. State v. Puterbaugh, 142 Ohio App.3d 185,2001-Ohio-2498. Instead, the State must also prove that the defendant's unsworn false oral statement did, in fact, hamper or impede the public official's performance of that duty. Id.
 {¶ 60} In the case sub judice, Deputy Dutton testified that King initially denied that he had been at Sears in response to Deputy Dutton's questioning on the date of the incident. King then recollected that he had driven through the parking lot but had not stopped, but later admitted that he did stop because a female flagged him down. King subsequently admitted that the female opened the door, but insisted that she did not get into the track. Viewing this evidence in a light most favorable to the prosecution, as we must, we can construe King's inconsistent statements as unsworn false oral statements, particularly his repeated insistence that the female subject did not get into his track after Deputy Dutton informed King that a witness observed the female do so.
 {¶ 61} However, we cannot find that the State demonstrated that King's unsworn false oral statements hampered or impeded Deputy Dutton's investigation. By the time Deputy Dutton questioned King about the incident, Deputy Dutton had already talked to the Sears employees and obtained their statements, obtained the license plate number of the track in which the female subject allegedly rode away, viewed the security camera videotape and took it into evidence, and obtained the diaper bag tag found in the area in which the female subject had been. Deputy Dutton acknowledged that the final steps in his investigation, after questioning King, would have involved finding the female subject and questioning her, and that King hampered his investigation by only failing to provide the female subject's name. Thus, assuming King knew the female subject's name, his refusal to provide it was the conduct which prevented further investigation, not his false statements about whether he had been near Sears or had had contact with the female.
 {¶ 62} Furthermore, King's failure to provide the female subject's name cannot constitute an affirmative act under R.C. 2921.31(A), because a person cannot be guilty of obstructing official business by failing to act. See Hamm, 33 Ohio App.3d 175; Michel, 55 Ohio App.2d 46;Collins (1993), 88 Ohio App.3d 291. King did not provide the female subject's name to Deputy Dutton, or even acknowledge that he knew the female's name at any time during Deputy Dutton's questioning. Thus, King could not have been "untruthful" by refusing to provide the female subject's name, particularly given the fact that he was not obligated to provide it under his Fifth Amendment right against self-incrimination, as Deputy Dutton also acknowledged during his testimony.
 {¶ 63} Based on the aforementioned reasons, we cannot find that, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that the State proved that any affirmative act by King substantially hampered or impeded Deputy Dutton's investigation beyond a reasonable doubt. Therefore, the trial court erred in denying King's Crim.R. 29 motion for judgment of acquittal.
 {¶ 64} Accordingly, we sustain King's third assignment of error.
 Assignments of Error Nos. IV V {¶ 65} In his fourth assignment of error, King contends that the jury's guilty verdict on the obstructing official business charge was against the manifest weight of the evidence.
 {¶ 66} In his fifth assignment of error, King contends that the trial court erred and abused its discretion when it gave him an excessive sentence.
 {¶ 67} Based on our disposition of King's third assignment of error, King's fourth and fifth assignments of error are moot and we decline to address them. See App.R. 12(c).
 {¶ 68} Having found no error prejudicial to the appellant herein in the particulars assigned and argued in his first and second assignments of error, but having found error prejudicial to the appellant herein in the particulars assigned and argued in his third assignment of error, we reverse the appellant's conviction and remand the matter for further proceedings consistent with this opinion.
Judgment reversed and Cause remanded.
 SHAW and BRYANT, JJ, concurs separately in judgment only.
[1] King's letter was dated January 30, 2006, but King formally filed it with the court on February 1, 2006.
[2] The trial court conducted the February 8, 2006, pretrial conference on the record based on "the comments and allegations made by [King] about his prior attorney and communication of offers and whether they were in agreement on to proceed with the case and so forth." (Pretrial Conference Tr., p. 1).
[3] We note that both the trial court and King referenced the wrong date as the starting point for computing the ninety day time period. In its March 10, 2006 ruling on King's motion to dismiss, the trial court used the date of the arraignment, July 5, 2005, as the starting date, whereas King alleged that the date that Deputy Dutton questioned him, June 14, 2005, was the appropriate starting date. Both are incorrect. R.C. 2945.71(B)(2) clearly provides that the ninety day period begins to ran "after the service of summons", which occurred on June 21, 2005.
[4] However, we express doubt regarding King's assertion that the reasoning for the October 19, 2005, continuance — his previous counsel's unavailability — does not suffice under McBreen.
[5] Evid.R. 702 provides that, in order for a witness' testimony to be deemed that of an "expert", the following requirements must be met:
 (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among laypersons;
 (B) The witness is qualified as an expert by specialization, knowledge, experience, training, or education regarding the subject matter of the testimony;
 (C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
 (1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
 (2) The design of the procedure, test, or experiment reliably implements the theory;
 (3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.
Even if we construed the basis for Deputy Dutton's opinion as satisfying Evid.R. 702(B), we cannot find that the State made any attempt to satisfy subparts (A) and (C) of the rule so as to establish him as an expert witness. 
[6] King does not argue that his conduct was a privileged act or that his conduct was not committed with the purpose or intent to hamper or impede the performance of a public official; instead, King focuses solely on whether his conduct constituted an affirmative act that hampered or impeded the performance of a public official. Accordingly, we will not address the first two elements of R.C. 2921.31(A).
[7] We note that, under former Ohio law, the making of an unsworn oral false statement to a public official was not considered an "act" that was punishable under R.C. 2921.31(A). See Dayton v. Rogers (1979),60 Ohio St. 2d 162. However, the Ohio Supreme Court expressly limited theRogers decision to its facts in State v. Bailey, (1994),71 Ohio St.3d 443, in holding that "the making of an unsworn oral false statement to a law enforcement officer with the purpose to hinder the officer's investigation of a crime is punishable conduct" under the obstruction of justice statute, R.C. 2921.32(A)(5). Subsequently, the Supreme Court extended the Bailey holding to the obstracting official business statute, R.C. 2921.31, and falsification statute, R.C. 2921.13, in Statev. Lazzaro, 76 Ohio St.3d 261, 1996-Ohio-397.