OPINION
{¶ 1} Defendant-Appellant, George Crisp, Jr., appeals a judgment of the Allen County Court of Common Pleas, sentencing him upon his convictions for possession of cocaine. On appeal, Crisp asserts that he was deprived of his right to a fair trial based upon prosecutorial misconduct; that he was deprived of his right to effective assistance of counsel; that Crisp could not be convicted of two counts of R.C 2925.11(A); and, that Crisp was sentenced under portions of R.C. 2929.14 that have been found unconstitutional pursuant to State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856. Finding that Crisp was not denied his right to a fair trial by either prosecutorial misconduct or ineffective assistance of counsel and that Crisp can be convicted of two counts of R.C. 2925.11(A), we affirm the judgment of the trial court as it relates to Crisp's conviction. However, having found that Crisp's sentence is void as based upon unconstitutional statutes, pursuant to Foster, the judgment of the trial court as it relates to Crisp's sentence is reversed and remanded for further proceedings.
 {¶ 2} In March of 2005, Officer Ronald Martin and Officer Damon Engelman of the Lima Police Department responded to a report of domestic violence. Upon arriving at the residence, the officers talked to Cynthia Luginbihl, who reported the domestic violence and stated that Crisp had just left her residence. Crisp was spotted by another officer just a few blocks from the residence where Officers Martin and Engelman had responded. After being advised that Crisp had been located a few blocks away, Officers Martin and Engelman went to where Crisp was found and placed him under arrest for the reported domestic violence.
 {¶ 3} As a result of the arrest, Crisp was transported to the Allen County Sheriff's Department in Officers Martin and Engelman's police cruiser. After removing Crisp from the police cruiser, Officer Engelman noticed two golf-ball sized bags in the back passenger seat of the police cruiser where Crisp had been sitting. Officer Engelman retrieved the baggies from the cruiser, and the substances in the baggies were identified as powder and crack cocaine.
 {¶ 4} Subsequently, Crisp was indicted by the Allen County Grand Jury for one count of possession of crack cocaine in violation of R.C. 2925.11(A)(C)(4)(c), a felony of the third degree, and one count of possession of cocaine in violation of R.C. 2925.11(A)(C)(4)(b), a felony of the fourth degree.
 {¶ 5} In June of 2005, a jury trial was held. At trial Officers Martin and Engelman testified to the above incident. Additionally, both Officers Martin and Engelman testified that they had checked the back of the police cruiser for contraband prior to their shift starting and before Crisp was transported. Officer Martin stated that they had transported one other person in the police cruiser during their shift that night, but that the cruiser had been re-checked after that person had been transported. Officer Engelman also testified that another person had been transported prior to Crisp, but that the backseat was checked again, including lifting the seats out to ensure that no contraband was left. Additionally, Officer Engelman testified that he had found the baggies after Crisp got out of the back of the police cruiser.
 {¶ 6} Finally, Matt Congleton, from the Ohio Bureau of Identification and Investigation, testified that the substances found in the baggies were crack cocaine and powder cocaine.
 {¶ 7} Upon presentation of all the evidence, the jury convicted Crisp on both counts of the indictment. Subsequently, Crisp was sentenced to three years of imprisonment for count one, possession of crack cocaine, and seventeen months of imprisonment for count two, possession of powder cocaine.
 {¶ 8} It is from this judgment Crisp appeals, presenting the following assignments of error for our review.
 Assignment of Error No. I APPELLANT WAS DEPRIVED OF A FAIR TRIAL THROUGH PROSECUTORIALMISCONDUCT
 Assignment of Error No. II APPELLANT WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TOEFFECTIVE ASSISTANCE OF COUNSEL.
 Assignment of Error No. III THE DEFENDANT COULD NOT BE CONVICTED OF TWO COUNTS OFVIOLATING R.C. 2925.11(A) FOR ONE ACT.
 Assignment of Error No. I {¶ 9} In the first assignment of error, Crisp contends that he was deprived of his right to a fair trial based upon prosecutorial misconduct. Specifically, Crisp argues that the State deliberately introduced hearsay testimony regarding the underlying domestic violence offense as well as hearsay testimony regarding Crisp's violent nature and frequent drug use.
 {¶ 10} "[T]he test for prosecutorial misconduct is whether the remarks were improper and, if so, whether the remarks prejudicially affected the accused's substantial rights." Statev. Twyford (2002), 94 Ohio St.3d 340, 354-55; see also, Statev. Smith (1984), 14 Ohio St.3d 13, 14. Thus, an improper question or remark made by the prosecutor can nevertheless fail to constitute reversible error. State v. Satta, 3rd Dist. No. 9-01-38, 2002-Ohio-5049, at ¶ 27. Ultimately, "the touchstone of this analysis `is the fairness of the trial, not the culpability of the prosecutor.'" Tywford, 94 Ohio St.3d at 355.
 {¶ 11} Upon review of the trial transcripts, the prosecutor clearly solicited superfluous testimony regarding the underlying domestic violence report. The prosecutor asked Officers Martin and Engelman the specific reason that they were at the residence. Additionally, the following took place on the record:
Prosecutor: So around 4:00 in the morning you responded tothis domestic violence call at 932 Michael, and speak to Ms.Luginbihl.
 Officer Engelman: Yes, Ma'am.
 Prosecutor: How long were you there speaking to her?
 Officer Engelman: Approximately 10 minutes.
 Prosecutor: And at any point did it come to your attentionthat Mr. Crisp was somewhere in the general vicinity?
 Officer Engelman: Yes, ma'am.
 Prosecutor: Okay. And how did you find that out?
 Officer Engelman: She said that he had left the residence andhad taken off walking in the area.
 Prosecutor: Where there any other patrol units in the areawhile you were at the residence?
 Officer Engelman: Yes ma'am.
 Prosecutor: And do you know who it was or who they were?Officer Engelman: We were in radio contact with Patrolman Goeddewho was searching the area to see if he could find Mr. Crispwhile we were speaking to the victim.
 Prosecutor: And at some point, were you made aware thatPatrolman Goedde had, in fact, found Mr. Crisp?
 Officer Engelman: Yes ma'am.
 Prosecutor: And when did you find that out? Where you still atthe residence speaking with the victim?
 Officer Engelman: We were still at the residence and headvised us over the radio that he had found Mr. Crisp.
 Prosecutor: Now, after you took the complaint from Ms.Luginbihl as to what happened, what if anything did you do?Officer Engelman: Spoke to Ms. Luginbihl about what had happened.She said that she had gotten into an argument with Mr. Crisp overMr. Crisp not wanting to join her in the bedroom. The argumentescalated by Mr. Crisp kicking her in the ankle. She had visiblebruising to the inside of her ankle. There was a broken TV on thefloor within the living room area. There were a lot of cables andcords laying strewn about the living room. So, Ms. Luginbihl washighly upset. She said that she's deadly afraid of Mr. Crispbecause he has a violent temper, frequently uses crack cocaine.
(Trial Tr. pp. 4-6.)
 {¶ 12} While we acknowledge that the trial court did strike some of the above testimony and instructed the jury that it was only to consider Officer Engelman's testimony to determine what Officer Engelman did, we find the last portion of this testimony clearly improper. Crisp was being tried for a drug offense, based upon the drugs that were found in the police cruiser. Beyond Crisp being picked up for an unrelated offense, the prosecutor had no reason to question these witnesses about the underlying domestic violence offense. Furthermore, the prosecutor's solicitation of Officer Engelman's testimony regarding what Ms. Luginbihl told him was wholly beyond the scope of this trial. The prosecutor had already amply provided the jury with evidence that Crisp was in the police cruiser; therefore, any additional background as to why Crisp was picked up was unnecessary and simply introduced to prejudice the defendant.
 {¶ 13} Nevertheless, we cannot find that the prosecutor's improper questioning rises to the level of reversible error in this case. Rather, we find any error in this regard was harmless. Harmless error is defined as "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." See Crim.R. 52(A). The Ohio Supreme Court has stated that "[h]armless error is any error that does not affect the outcome of the case and, thus, does not warrant a judgment overturned or set aside." State v. Brown, 100 Ohio St.3d 51,2003-Ohio-5059, ¶ 25.
 {¶ 14} It is clear from the record that the evidence presented against Crisp as to the drug charges was overwhelming. Thus, while we do not approve the prosecutor's questioning witnesses about the underlying domestic violence report or Crisp's violent nature and drug use, we simply cannot find that the prosecutor's actions affected the outcome of this case sufficiently to require that the verdict be overturned or set aside. Accordingly, the first assignment of error is overruled.
 Assignment of Error No. II {¶ 15} In the second assignment of error, Crisp asserts that he was denied his constitutional right to effective assistance of counsel. Specifically, Crisp asserts that his trial counsel was ineffective, because he failed to object to the testimony elicited by the prosecutor regarding the underlying domestic violence report, because he failed to object to statements made by the prosecutor during his or her opening statement that Crisp was a violent person and because he failed to file a motion in limine regarding the introduction of facts about the underlying domestic violence report.
 {¶ 16} An ineffective-assistance-of-counsel claim requires proof that trial counsel's performance fell below objective standards of reasonable representation and that the defendant was prejudiced as a result. State v. Bradley (1989),42 Ohio St.3d 136, para. two of syllabus. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, but for counsel's errors, the outcome at trial would have been different. Id. at para. three of syllabus. "Reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. State v. Waddy (1992), 63 Ohio St.3d 424, 433.
 {¶ 17} In light of our disposition of the first assignment of error, we cannot find that there is a reasonable probability that Crisp's claimed deficiency of trial counsel's failure to object to the elicited testimony and comments made during opening statements as well as the failure to file a motion in limine would have changed the result of the trial. Accordingly, Crisp's argument is not well taken.
 Assignment of Error No. III {¶ 18} In the third assignment of error, Crisp asserts that his being convicted of two counts of R.C. 2925.11(A) is error. Specifically, Crisp argues that he could only be convicted of one count of possession of cocaine in violation of R.C. 2925.11(A), regardless of their being two different cocaine substances, namely powder cocaine and crack cocaine.
 {¶ 19} R.C. 2925.11 provides in pertinent part:
(A) No person shall knowingly obtain, possess or use acontrolled substance.
* * *
(C) Whoever violates division (A) of this section is guilty ofone of the following:
* * *
(4) If the drug involved in the violation is cocaine or acompound, mixture, preparation, or substance containing cocaine,whoever violates division (A) of this section is guilty ofpossession of cocaine. The penalty for the offense shall bedetermined as follows:
* * *
(b) If the amount of the drug involved equals or exceeds fivegrams but is less than twenty-five grams of cocaine that is notcrack cocaine or equals or exceeds one gram but is less than fivegrams of crack cocaine, possession of cocaine is a felony of thefourth degree, and there is a presumption for a prison term forthe offense.
 (c) If the amount of the drug involved equals or exceedstwenty-five grams but is less than one hundred grams of cocainethat is not crack cocaine or equals or exceeds five grams but isless than ten grams of crack cocaine, possession of cocaine is afelony of the third degree, and the court shall impose as amandatory prison term one of the prison terms prescribed for afelony of the third degree.
 {¶ 20} As noted above, Crisp was convicted of two counts of possession of cocaine. Count one involved Crisp's possession of crack cocaine, and count two involved Crisp's possession of powder cocaine. However, both counts arose from Officer Engelman finding two baggies containing these substances in the backseat of the police cruiser. On appeal, Crisp asserts that he cannot be convicted of both counts, because both counts stemmed from a single act of possession of cocaine. Essentially, Crisp argues that because both counts involved a cocaine derivative, he can only be convicted of one count based upon the facts and circumstances of this case.
 {¶ 21} As noted above, Crisp was specifically charged under R.C. 2925.11(A) and (C)(4) for both counts one and two. Again, R.C. 2925.11(C)(4) provides that "Whoever violates division (A) of this section is guilty of one of the following: (4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine." Furthermore, R.C. 2925.01 provides the following definitions of "cocaine" and "crack cocaine":
(X)`Cocaine' means any of the following:
 (1) A cocaine salt, isomer, or derivative, a salt of a cocaineisomer or derivative, or the base form of cocaine;
 (2) Coca leaves or a salt, compound, derivative, orpreparation of coca leaves, including ecgonine, a salt, isomer,or derivative of ecgonine, or a salt of an isomer or derivativeof ecgonine;
 (3) A salt, compound, derivative, or preparation of asubstance identified in division (X)(1) or (2) of this sectionthat is chemically equivalent to or identical with any of thosesubstances, except that the substances shall not includedecocainized coca leaves or extraction of coca leaves if theextractions do not contain cocaine or ecgonine.
* * *
(GG) `Crack cocaine' means a compound, mixture, preparation,or substance that is or contains any amount of cocaine that isanalytically identified as the base form of cocaine or that is ina form that resembles rocks or pebbles generally intended forindividual use.
Based upon the above definitions, "cocaine" and "crack cocaine" each include the base form of cocaine. However, they are different forms of the same base substance. "There are real differences between the addictive impact of crack cocaine and free-base cocaine, on the one hand, and powder cocaine, on the other. The differences arise from the different way in which the drug is used." State v. Bryant (July 17, 1998), 2d Dist. No. 16809.
 {¶ 22} R.C. 2925.11(C)(4)(a)-(e), which are the specific penalty provisions for the possession of cocaine offenses, clearly make a distinction between cocaine that is not crack cocaine and crack cocaine. Essentially, each of the penalty provisions imposes more severe penalties for possession of crack cocaine. Thus, based upon such harsher penalties, we find it is clear that the legislature intended there to be a distinction between cocaine that is not crack and crack cocaine. Additionally, it is been recognized that such harsher penalties for crack cocaine are justified because crack cocaine "is more potent, because of the way it is ingested, than powder cocaine, and therefore is more dangerous to the user, and to society in generally." Bryant, supra.
 {¶ 23} Furthermore, in State v. Jennings (1987),42 Ohio App.3d 179, 183, the First District Court of Appeals held that a defendant may be charged with two counts of possession of listed Schedule II substances Tylox and Percodan, two drugs with different trade names, both of which contain the scheduled substance oxycodone.
 {¶ 24} Thus, while we recognize that that there is no distinction between cocaine and crack in the schedule definitions, we find with the specific penalty provisions under R.C. 2925.11(C)(4), the legislature clearly made a distinction. As such, we find that Crisp's convictions for two separate offenses of possession for both powder cocaine and crack cocaine is not error. Accordingly, the third assignment of error is overruled.
 {¶ 25} Pursuant to a supplemental brief, Crisp asserts that he was sentenced under portions of R.C. 2929.14 that have been found unconstitutional pursuant to State v. Foster, supra. InFoster, the Supreme Court of Ohio held that portions of Ohio's felony sentencing framework are unconstitutional and void, including R.C. 2929.14(B), which require judicial findings for more than the minimum prison term. 2006 Ohio 856, at ¶¶ 61, 83. Pursuant to the ruling of the Ohio Supreme Court in Foster, we find that Crisp's sentence is void as being based upon unconstitutional statutes. Accordingly, we find Crisp's supplemental argument to be well taken.
 {¶ 26} Having found no error prejudicial to Appellant herein, in the particulars assigned and argued, in the first, second and third assignments of error, the judgment is affirmed with respect to Appellant's conviction. However, having found error prejudicial to Appellant in Appellant's supplemental briefing, the judgment is reversed with respect to Appellant's sentence, and remanded for further proceedings pursuant to State v.Foster, supra.
Judgment affirmed in part, reversed in part and causeremanded.
 Bryant, P.J., concurs.
 Cupp, J., concurs separately.