OPINION *Page 2 
{¶ 1} Defendant-Appellant Alrenzo Blandin ("Blandin") appeals the December 13, 2006 Judgment of Conviction and Sentencing of the Court of Common Pleas, Allen County, Ohio sentencing him to 18 months for Possession of Crack Cocaine, in violation of R.C. 2925.11(A) 
(C)(4)(b), a felony of the fourth degree; 12 months for Possession of Powder Cocaine, in violation of R.C. 2925.11(A) (C)(4)(a), a felony of the fifth degree; 10 years for Possession of Crack Cocaine, in violation of R.C. 2925.11(A) (C)(4)(e), a felony of the first degree; and 8 years for Possession of Powder Cocaine, in violation of R.C. 2925.11(A) (C)(4)(d), a felony of the second degree.
 {¶ 2} This matter stems from an investigation, commencing in June 2005 and culminating in August 2005, into Blandin's drug distribution activities. The investigation began when Sergeant Kyle Fittro of the West Central Ohio Crime Taskforce was contacted by a potential confidential informant Michael Tallman, who was incarcerated in the Allen County Jail. Tallman indicated that he had previously sold cocaine for Blandin, but that his relationship with Blandin had changed. While Tallman was incarcerated, Blandin had or attempted to have sexual intercourse with Tallman's wife. Tallman stated that this caused him to wish to act as a confidential informant against Blandin.
 {¶ 3} Tallman began acting as a confidential informant shortly after contacting Sergeant Fittro. They established that Blandin resided at 609 East Kibby Street in Lima, *Page 3 
Ohio ("609 East Kibby St.") and that he drove a blue Mercedes in which he often concealed drugs. Through frequent communications between Tallman and Sergeant Fittro, it was decided that they would wait for Blandin to be in possession of a substantial amount of cocaine before initiating the bust. However, there were numerous times during the investigation when Tallman contacted Sergeant Fittro indicating that Blandin was in possession of cocaine.
 {¶ 4} The charges against Blandin stemmed from events occurring on the evening of August 3, 2005, and into the early morning hours of August 4, 2005. On August 3, 2005 at approximately 8-8:30p.m. Tallman contacted Sergeant Fittro notifying him that he had just left 609 East Kibby St. and that Blandin had a substantial quantity of cocaine in both the residence and his Mercedes. Tallman also indicated that Blandin would probably be leaving the residence soon, taking an amount of the cocaine with him.
 {¶ 5} At this point, Sergeant Fittro began contacting other officers including his supervisor Sergeant Clyde Breitigan who advised him to contact someone to monitor the residence at 609 East Kibby Street. Investigator John Butler was contacted, informed that Blandin had cocaine in his home and vehicle, and instructed to go to Blandin's residence at 609 East Kibby St. to observe the residence and follow the vehicle if it left the residence. Investigator Butler was further instructed to have the vehicle stopped if it left the residence. Once Investigator Butler was dispatched to the residence, Sergeant *Page 4 
Fittro and Investigator Johnson began preparing a search warrant for the search of the property at 609 East Kibby Street.
 {¶ 6} After Investigator Butler arrived at the house, he observed Blandin leaving in his vehicle. He followed Blandin's vehicle and observed a passenger that Blandin picked up at a gas station enter and leave the vehicle within a short period of time. Blandin then picked up a female passenger. Investigator Butler subsequently contacted a uniformed officer to have Blandin's vehicle pulled over.
 {¶ 7} While the female passenger was still in the vehicle, Deputy Douglass pulled Blandin over in a marked cruiser for a turn signal violation. Blandin was later cited for this violation. Once Blandin was pulled over, Deputy Douglas called for a drug sniffing dog. Deputy McPheron arrived approximately fifteen minutes later with K-9 Simba. While Blandin was still in the vehicle, Simba was walked around the car and alerted, indicating the presence of drugs in the vehicle.
 {¶ 8} After the dog alerted on the car, Blandin asked to get out of the car, claiming he was hot. At this point Blandin became uncooperative when officers requested permission to search his person and the vehicle, responding "No, Fuck you, Get a warrant. You know, if you want to search my car, get a warrant." (Tr.p. 437). Blandin was placed in the back of the cruiser.
 {¶ 9} Upon searching the vehicle, officers were unable to find contraband. However, Investigator Butler noticed a lump at the top line of Blandin's pants. *Page 5 
Testimony was given at trial that officers had received tips that Blandin often concealed contraband in the crotch area of his pants. Moreover, the female passenger, who was being detained until a female officer could be summoned to conduct a pat-down, indicated to officers that the Blandin placed the contraband down his pants upon being stopped. After another officer also observed the strange bulge, the officers removed the bulge and discovered a sack of off white substance, later identified as cocaine and green vegetative substance.
 {¶ 10} After the traffic stop, Investigator Matthew Treglia was sent to Blandin's residence to perform surveillance on the residence, pending preparation of the warrant. After observing the residence for some time, several women approached the residence, one of whom identified herself as the mother of two young children, also belonging to Blandin. At this point, officers accompanied the women and children into Blandin's residence to obtain their belongings and then left the residence.
 {¶ 11} After a warrant was obtained, at approximately 12:30 a.m. on August 4, Investigator Treglia, Investigator Butler, and Sergeant Breitigan entered the home. Inside the residence, officers found digital scales, inositoc,[1] a microwave plate with a razor blade and a plastic credit card belonging to Blandin, and a back pack containing cocaine.
 {¶ 12} On August 11, 2005 Blandin was indicted on one count of Possession of Crack Cocaine, in violation of R.C. 2925.11(A) 
(C)(4)(b); one count of Possession of *Page 6 
Powder Cocaine, in violation of R.C. 2925.11(A) (C)(4)(a); one count of Possession of Crack Cocaine, in violation of R.C. 2925.11(A) 
(C)(4)(f); and one count of Possession of Powder Cocaine, in violation of R.C. 2925.11(A) (C)(4)(d). Blandin was arraigned on August 18, 2005 and entered a plea of not guilty.
 {¶ 13} A jury trial commenced on December 5, 2006 at which time the State made an oral motion to amend count three to Possession of Crack Cocaine in violation of R.C. 2925.11(A) (C)(4)(e). On December 13, 2006 the jury returned a verdict of guilty on all four counts.
 {¶ 14} The trial court proceeded to sentencing on December 13, 2006. Blandin was sentenced to 18 months for Possession of Crack Cocaine, in violation of R.C. 2925.11(A) (C)(4)(b); 12 months for Possession of Powder Cocaine, in violation of R.C. 2925.11(A) (C)(4)(a); 10 years for Possession of Crack Cocaine, in violation of R.C. 2925.11(A) 
(C)(4)(e); and 8 years for Possession of Powder Cocaine, in violation of R.C. 2925.11(A) (C)(4)(d). These sentences were ordered to be served consecutively.
 {¶ 15} Blandin now appeals, asserting five assignments of error.
 ASSIGNMENT OF ERROR I THE TRIAL COURTS VERDICT THAT DEFENDANT WAS GUILTY OF POSSESSION OF DRUGS IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE *Page 7 
 ASSIGNMENT OF ERROR II THE COURT ERRED WHERE DEFENDANT WAS SENTENCED TO CONSECUTIVE TERMS
 ASSIGNMENT OF ERROR III APPELLEE'S EVIDENCE WAS LEGALLY INSUFFICIENT TO SUPPORT THE VERDICT OF THE TRIAL COURT
 ASSIGNMENT OF ERROR IV THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT PERMITTED THE STATE OF OHIO TO INTRODUCE EVIDENCE FROM A CONFIDENTIAL INFORMANT THROUGH LAW ENFORCEMENT, THEREBY RESULTING IN HARMFUL PREJUDICE TO THE DEFENDANT APPELLANT, AND SO CONSTITUTING REVERSIBLE ERROR, BY DENYING A FAIR JURY AND DUE PROCESS OF LAW
 ASSIGNMENT OF ERROR V THE TRIAL COURT REVERSIBLE ERRED TO THE PREJUDICE OF THE DEFENDANT/APPELLANT WHEN SAID COURT OVERRULED THE DEFENDANT'S MOTION TO SUPPRESS THE EVIDENCE TAKEN FROM THE DEFENDANT/APPELLANT IN SUBSTANTIAL VIOLATION OF THE FUNDAMENTAL CONSTITUTIONAL RIGHT TO BE SECURE FROM UNREASONABLE SEARCHES AND SEIZURES AS GUARANTEED BY THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION APPLICABLE TO THE STATES THROUGH THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION
 First and Third Assignments of Error {¶ 16} For ease of discussion Blandin's first and third assignments of error will be discussed together. In his first assignment of error, Blandin claims that his convictions were not supported by the manifest weight of the evidence. Blandin also claims, in his third assignment of error that his convictions were not supported by sufficient evidence. *Page 8 
 {¶ 17} Reviewing a challenge to the sufficiency of the evidence requires this Court to examine the evidence in the light most favorable to the prosecution. In State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, the Ohio Supreme Court set forth the sufficiency of the evidence test as follows:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial and determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 {¶ 18} Alternatively, when reviewing whether a verdict is against the manifest weight of the evidence, the appellate court must review the entire record, consider the credibility of witnesses, and determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541, 1997-Ohio-52.
 {¶ 19} It is important to remember that the credibility to be afforded the testimony of the witnesses is to be determined by the trier of fact.State v. Dye (1998), 82 Ohio St.3d 323, 329, 695 N.E.2d 763,1998-Ohio-234; State v. Frazier (1995), 73 Ohio St.3d 323,652 N.E.2d 1000, 1995-Ohio-235. The jury is "best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in *Page 9 
weighing the credibility of the proffered testimony." Seasons Coal Co.,Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273.
 {¶ 20} Blandin was convicted of two different counts of Possession of Crack Cocaine in violation of R.C. 2925.11(A) (C)(4)(b) and R.C.2925.11(A) (C)(4)(e), and two counts of Possession of Powder Cocaine in violation of R.C. 2925.11(A) (C)(4)(a) and R.C. 2925.11(A) 
(C)(4)(d). Revised Code 2925.11 provides in pertinent part:
 (A) No person shall knowingly obtain, possess, or use a controlled substance.
 * * *
 (C) Whoever violates division (A) of this section is guilty of one of the following:
 (4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine. The penalty for the offense shall be determined as follows:
 (a) Except as otherwise provided in division (C)(4)(b), (c), (d), (e), or (f) of this section, possession of cocaine is a felony of the fifth degree, and division (B) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender.
 (b) If the amount of the drug involved equals or exceeds five grams but is less than twenty-five grams of cocaine that is not crack cocaine or equals or exceeds one gram but is less than five grams of crack cocaine, possession of cocaine is a felony of the fourth degree, and there is a presumption for a prison term for the offense.
 * * * *Page 10 
 (d) If the amount of the drug involved equals or exceeds one hundred grams but is less than five hundred grams of cocaine that is not crack cocaine or equals or exceeds ten grams but is less than twenty-five grams of crack cocaine, possession of cocaine is a felony of the second degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the second degree.
 (e) If the amount of the drug involved equals or exceeds five hundred grams but is less than one thousand grams of cocaine that is not crack cocaine or equals or exceeds twenty-five grams but is less than one hundred grams of crack cocaine, possession of cocaine is a felony of the first degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the first degree.
 {¶ 21} At trial the jury heard the testimony of the officers who had confiscated the cocaine from Blandin. They stated that a quantity of both crack and powder cocaine were found on his person and also that both crack and powder cocaine were found in his residence. The officers testified that Blandin had personal possession of the cocaine found on his person, which was discovered in his pants, tucked right below the belt line.
 {¶ 22} The quantity of cocaine found in the residence was found in a blue and black backpack, hanging on a hook inside the door to a room that appeared to have been converted into a bedroom. Also concealed in the closet of the converted bedroom at 609 East Kibby Street were digital scales and the inositoc. Officers testified that they believed the room where the backpack was found belonged to Blandin based on the size of clothing found and other objects found in the room. When the room was searched a *Page 11 
box of paperwork and letters belonging to Blandin were discovered in the room. Some of that paperwork used 609 East Kibby Street as Blandin's home address.
 {¶ 23} Moreover, the jury heard the testimony of Scott Dobransky, a forensic scientist with the Ohio Bureau of Criminal Identification and Investigation. Dobransky testified that he tested the contraband confiscated from Blandin and the substances were cocaine and crack cocaine. Furthermore, Dobransky testified that in excess of one gram of crack cocaine and 2.43 grams of powder cocaine were found in the substance removed from Blandin during the search of his person. He further testified that 96.85 grams of crack cocaine and 203.97 grams of powder cocaine were the amounts found in Blandin's residence. Investigator Butler also identified these drugs and confirmed for the jury where they were found and that he had personally taken these items to the Bureau of Criminal Identification and Investigation.
 {¶ 24} Based on this evidence, we find that Blandin's convictions were supported by the manifest weight of the evidence as a reasonable jury could have found Blandin guilty of the four counts of possession. Blandin's convictions were also supported by sufficient evidence to sustain his conviction as we cannot say that the jury lost its way in convicting Blandin. Accordingly, Blandin's first and third assignments of error are overruled. *Page 12 
 Second Assignment of Error {¶ 25} In his second assignment of error, Blandin contends that the trial court was required to make findings in support of the imposition of consecutive sentences pursuant to R.C. 2929.14(E)(4).
 {¶ 26} The Supreme Court of Ohio recently addressed constitutional issues concerning felony sentencing in State v. Foster,109 Ohio St.3d 1, 845 N.E.2d 470, 2006-Ohio-856. In Foster, the Supreme Court of Ohio held that portions of Ohio's felony sentencing framework were unconstitutional and void, including R.C. 2929.14(E), so that "judicial fact-finding is not required before imposition of consecutive prison terms." Foster, 109 Ohio St.3d 1 at syllabus. Regarding new sentences and re-sentences, the Supreme Court of Ohio stated, "we have concluded that trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Foster, 109 Ohio St.3d 1 at ¶ 100.
 {¶ 27} As this court is required to follow precedent as set forth by the Supreme Court of Ohio and the United States Supreme Court, we find no error in the trial court's decision to sentence Blandin to an aggregate prison term of 20.5 years for his felony convictions.
 {¶ 28} Pursuant to R.C. 2929.14(A),
 . . . [i]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender pursuant to this *Page 13 
 chapter, the court shall impose a definite prison term that shall be one of the following:
 * * *
 (1) For a felony of the first degree, the prison term shall be three, four, five, six, seven, eight, nine, or ten years.
 (2) For a felony of the second degree, the prison term shall be two, three, four, five, six, seven, or eight years.
 (3) For a felony of the third degree, the prison term shall be one, two, three, four, or five years.
 (4) For a felony of the fourth degree, the prison term shall be six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, fifteen, sixteen, seventeen, or eighteen months.
 (5) For a felony of the fifth degree, the prison term shall be six, seven, eight, nine, ten, eleven, or twelve months.
 {¶ 29} In this case, the trial court sentenced Blandin to prison terms within the statutory range set forth above. Blandin also argues that his sentences should have run concurrently because the convictions stemmed from the same act or animus.
 {¶ 30} This Court has previously recognized that although there is no distinction between powder cocaine and crack cocaine in the schedule definitions, the specific penalty provisions under R.C. 2925.11(C)(4) show that the legislature clearly intended a distinction. State v.Crisp, 3rd Dist. No. 1-05-45, 2006-Ohio-2509. Furthermore, the separate charges for two instances of possession of crack cocaine and two instances of possession of powder cocaine were appropriate. In this case, Blandin had a quantity of both powder and crack cocaine on his person when his car was stopped. Alternatively, Blandin had constructive possession of the quantity of both powder and crack cocaine *Page 14 
that was found in his home in the subsequent search. Accordingly, this constitutes two separate acts of possession. See State v. Wilder, 2nd Dist. No. 20996, 2006-Ohio-1975. For the foregoing reasons, Blandin's second assignment of error is overruled.
 Fourth Assignment of Error {¶ 31} In his fourth assignment of error, Blandin argues that hearsay testimony was improperly introduced during the testimony of Sergeant Fittro. The trial court has broad discretion over evidentiary rulings, and such rulings will not be reversed on appeal absent an abuse of discretion. In re Sherman, 3rd Dist. Nos. 05-04-47, 05-04-48, and 05-04-49, 2005-Ohio-5888, citing State v. Lundy (1987),41 Ohio App.3d 163, 169, 535 N.E.2d 664. Abuse of discretion constitutes more than an error of law or judgment and implies that the trial court acted "unreasonably, arbitrarily, or unconscionably." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 32} The testimony in question involves Sergeant Fittro's explanation of how he came to be involved with Tallman. Included in these statements were Tallman's assertions that he had previously sold cocaine for Blandin and that "Blandin was a big player, as they put it, and was capable of distributing multiple kilograms of cocaine." (Tr.p. 339).
 {¶ 33} Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ohio Evid. R. 801(c). Hearsay statements are generally inadmissible. *Page 15 
 {¶ 34} During the disputed testimony, Blandin repeatedly objected and in fact, entered a standing objection to the testimony on the record. (Tr.p. 334). In response to Blandin's objections, the jury was repeatedly instructed that this information was not to be considered for the truth of the matter asserted, but was only to be considered to show how Sergeant Fittro came into contact with Tallman, and to explain Sergeant Fittro's behavior. We find that this was a proper instruction to cure any hearsay problems that arose from Sergeant Fittro's testimony concerning Tallman's statements.
 {¶ 35} In addition to the cautionary instruction given to the jury, it is important to note that Michael Tallman did testify at trial. (Tr.p. 592-603). During Tallman's testimony, Blandin had ample opportunity to cross examine Tallman about any statements Sergeant Fittro previously made.
 {¶ 36} Finally, we note that that Blandin argues that these statements should have been excluded under Evid. R. 403 which provides:
 (A) Exclusion mandatory
 Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.
 (B) Exclusion discretionary
 Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence. *Page 16 
Tallman was available and did testify to many of the items originally testified to by Sergeant Fittro. Blandin had opportunity to cross-examine and confront Tallman concerning any statements introduced by Sergeant Fittro. Furthermore, this court agrees with the State that any prejudicial impact from Fittro's statements was not outcome determinative when compared to the totality of the evidence presented against Blandin. Accordingly, Blandin's fourth assignment of error is overruled.
 Fifth Assignment of Error {¶ 37} In his fifth assignment of error, Blandin contends that the trial court erred when it overruled his motion to suppress. Specifically, Blandin contends that the drugs found during the traffic stop should have been suppressed, as the stop was "pretextual" in nature. Blandin further argues that the warrant to search his home was then issued without sufficient probable cause.
 {¶ 38} When a trial court considers a motion to suppress, it must make both factual and legal determinations. State v. Jones, 9th Dist. No. 20810, 2002-Ohio-1109 citing Ornelas v. U.S. (1996), 517 U.S. 690, 699,116 S.Ct. 1657, 134 L.Ed.2d 911, 920. Moreoever, when we review a trial court's decision that evidence arising out of a challenged seizure should not be suppressed we apply the law, de novo, to the facts as determined by the trial court. Id. At a suppression hearing, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. State v. Carter (1995), 72 Ohio St.3d 545, 552, *Page 17 651 N.E.2d 965, 1995-Ohio-104; State v. Mills (1992), 62 Ohio St.3d 357,366, 582 N.E.2d 972. Furthermore, when reviewing a trial court's decision on a motion to suppress, an appellate court must uphold the trial court's findings of fact if they are supported by competent, credible evidence. State v. Dunlap (1995), 73 Ohio St.3d 308, 314,652 N.E.2d 988, 1995-Ohio-243.
 {¶ 39} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures." Accordingly, the State is prohibited from making unreasonable intrusions into areas where people have legitimate expectations of privacy without a search warrant. United States v. Chadwick (1977), 433 U.S. 1, 7, 97 S.Ct. 2476,53 L.Ed.2d 538, overruled on other grounds in California v. Acevedo
(1991), 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619.
 {¶ 40} In the present case, Blandin challenges both the search of his vehicle as well as the search of his residence. Since the search of the vehicle was first in time, we will address it first.
 {¶ 41} There are two different types of constitutional traffic stops, each requiring a different standard to be lawful. State v.Phillips, 3rd Dist. No. 8-04-25, 2006-Ohio-6338, at ¶ 18. The first is a traffic stop based on a reasonable suspicion that criminal activity is afoot. *Page 18 
 {¶ 42} Automobiles may be stopped without a warrant as long as there exists "a reasonably articulable belief that an offense has been committed or that the vehicle contains contraband." State v. Ward, 1st Dist. No. C-040379, 2005-Ohio-3036, citing Chambers v. Maroney (1970),399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419. An investigatory stop is the motorized equivalent of a Terry stop. Terry v. Ohio (1968), 392 U.S. 1,88 S.Ct. 1868, 20 L.Ed.2d 889. To satisfy the Terry standard there must be an "articulable and reasonable suspicion" that an offense has been or is being committed. Furthermore, "[o]nce a law-enforcement officer has probable cause to believe that a vehicle contains contraband, the officer may search a validly stopped motor vehicle based on the well-established automobile exception to the warrant requirement."State v. Ward at ¶ 30 citing Maryland v. Dyson (1999), 527 U.S. 465,119 S.Ct. 2013, 144 L.Ed.2d 442; State v. Moore (2000), 90 Ohio St.3d 47,734 N.E.2d 804, 2000-Ohio-10.
 {¶ 43} The second type of constitutionally valid automobile stop is based on probable cause. This Court has previously recognized that probable cause for a traffic stop is provided when an officer had probable cause to believe that a traffic violation has occurred or was occurring. State v. Phillips, supra, at ¶ 18. The intent of the officers is irrelevant where a traffic violation occurred.
 Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity. *Page 19 
Dayton v. Erickson, 76 Ohio St.3d 3, 11, 665 N.E.2d 1091; see also,Whren v. United States (1996), 517 U.S. 806, 819, 116 S.Ct. 1769,135 L.Ed.2d 89.
 {¶ 44} Blandin's vehicle was stopped pursuant to the direction of Sergeant Fittro, who had instructed Investigator Butler to stop Blandin's vehicle if it left 609 East Kibby Street. He was further instructed to have the vehicle stopped regardless of whether a traffic violation occurred. Sergeant Fittro testified at the suppression hearing that he believed sufficient probable cause existed to make the stop without Blandin committing a traffic violation.
 {¶ 45} Once Investigator Butler observed Blandin's Mercedes leave 609 East Kibby Street, Butler followed the vehicle, watching a person quickly enter and exit the vehicle before the vehicle picked up a female passenger. Butler contacted Deputy Douglass, a uniformed officer, to make the stop of the car. The traffic stop was then made following a turn signal violation.
 {¶ 46} Investigator Butler had information from Sergeant Fittro that Tallman indicated Blandin had drugs in the car. Butler himself had observed suspicious activity on the part of Blandin, including the quick dealings with the first passenger. The stop was valid based on both a reasonable suspicion that criminal activity was afoot was well as based on the traffic stop for failure to use a turn signal.
 {¶ 47} The length of Blandin's detention was also contested at the suppression hearing. Blandin was stopped at approximately 9:40 p.m. The drug dog arrived and *Page 20 
sniffed the car at approximately 10:00-10:15 p.m. This does not constitute an unreasonably long detention in order to have the drug dog brought to the scene. Moreover, the alert by K-9 Simba, together with the foregoing information, provided probable cause for the search of the vehicle.
 {¶ 48} It was at this point that Blandin asked to get out of the vehicle and was subsequently placed in the back of the police cruiser. He remained there while officers searched the vehicle. Nothing was found during the search of the vehicle. However, as previously noted, the female passenger was being detained until a female officer could be summoned to conduct a pat-down. During the time that the female was detained, she was identified by Sergeant Clyde Breitigan as someone he had previous dealings with. She stated to Sergeant Breitigan before the contraband was removed from Blandin's pants "Clyde, Clyde, it's down his pants, It's down his pants." (Tr.p. 501).
 {¶ 49} At this point officers again approached Blandin who was in the back of the cruiser and noticed a large lump at the center of his belt line. One officer described the lump as a softball that had been cut in half. After observing the lump, Sergeant Breitigan squeezed it and heard the crinkle of plastic and could feel a hard object in the package. This gave Breitigan a suspicion that this package contained contraband, and he subsequently unzipped Blandin's fly about halfway in order to remove the drugs from his person. *Page 21 
 {¶ 50} With regard to the search after the traffic stop, we find that Sergeant Breitigan had probable cause to search Blandin's person to remove the contraband from his pants. Probable cause exists when a reasonably prudent person would believe that there is a fair probability that the place to be searched contains evidence of a crime. Illinois v.Gates (1983), 462 U.S. 213, 246, 103 S.Ct. 2317, 76 L.Ed.2d 527. Here, Sergeant Breitigan had reason to believe that drugs would be found in this concealed package.
 {¶ 51} This was also a constitutional search because an exigency existed. The search was effectuated to preserve evidence that could potentially be lost or destroyed while waiting to obtain a search warrant. Cupp v. Murphy (1973), 412 U.S. 291, 93 S.Ct. 2000. Here, the contraband could have been maneuvered out of Blandin's pants or lost while awaiting a search warrant.
 {¶ 52} Blandin further contends that the warrant to search the residence at 609 East Kibby was not supported by sufficient probable cause. The Ohio Supreme Court has previously held that:
 [i]n determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, `[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Page 22 
State v. George (1989), 45 Ohio St.3d 325, 544 N.E.2d 640, at syllabus, citing Illinois v. Gates (1983), 462 U.S. 213, 238-39, 103 S.Ct. 2317,76 L.Ed.2d 527. In the United States Supreme Court's seminal case regarding determinations of probable cause to issue search warrants,Illinois v. Gates, the Court stated that the definition of probable cause "means less than evidence which would justify condemnation * * *. It imports a seizure made under circumstances which warrant suspicion."Gates, 462 U.S. at 235, quoting Locke v. United States (1813),11 U.S. 339, 348, 3 L.Ed. 364. Thus, "[i]t is clear that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." Gates, 462 U.S. at 235, quoting Spinelli v.United States (1969), 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637, abrogated byGates, supra.
 {¶ 53} When "reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by [a judge or] magistrate [under the totality of the circumstances analysis ofGates], neither a trial court nor an appellate court should substitute its judgment for that of the judge or magistrate by conducting a denovo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant."State v. Bressler, 3rd Dist. No. 15-05-13, 2006-Ohio-611
at ¶ 13; State v. George, 45 Ohio St.3d 325; Illinois v. Gates,462 U.S. 213. Rather,
 the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord *Page 23 great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant.
George, 45 Ohio St.3d at syllabus. Further, it is important to note that, probable cause exists when a reasonably prudent person would believe that there is a fair probability that the place to be searched contains evidence of a crime. Gates, 462 U.S. 213.
 {¶ 54} The affidavit supporting the search warrant, in the present case, details the West Central Ohio Crime Task Force's procedures for procuring information from confidential informants. Also included in the affidavit is information from two confidential informants stating:
 The Affiant states that on 11/06/03 and 11/13/03 C.I. #1 purchased a known amount of cocaine from Alrenzo Blanden under the direction of the West Central Ohio Crime Task Force.
 A confidential informant, hereafter referred to as C.I. #2 . . . has an ongoing relationship with Alrenzo Blanden. Alrenzo Blanden has been implicated in possessing and distributing cocaine and crack cocaine in the past, and the C .I. has observed Alrenzo Blanden with multiple ounces of cocaine and crack cocaine in the past.
 The affiant states that on 07/31/05 C.I. #2 advised the affiant that Alrenzo Blanden was in possession of a sandwich bag full of crack cocaine while at the Days Inn Hotel in Lima, Allen County, Ohio.
 The Affiant states that on 08/03/05 the C.I. met with Alrenzo Blanden. Blanden advised the C.I. that he had recently met with several Hispanic males who had provided Blanden with approximately one half kilo of cocaine. During this time, the C.I. observed approximately five ounces of powder cocaine in the trunk of Alrenzo Blanden's blue four door Mercedes, which was parked in Alrenzo Blanden's driveway at 609 E. Kibby St., Lima Allen County, Ohio. At this time, Blanden also had approximately one ounce of crack cocaine and one half ounce *Page 24 of powder cocaine in the residence located at 609 E. Kibby St. Lima, Allen County, Ohio.
 {¶ 55} The affidavit also includes, in a final paragraph, the information gained from the traffic stop of Blandin. However, according to Sergeant Fittro, who prepared the search warrant, the search warrant was already in preparation before Blandin's vehicle was stopped. Sergeant Fittro testified at trial that the warrant would be sought regardless of the outcome of the traffic stop, but that the fruits of the traffic stop were included in the warrant only to add additional probable cause. We find that with or without the information from the traffic stop, the warrant to search 609 East Kibby Street was supported by sufficient probable cause.
 {¶ 56} Based on the foregoing, Blandin's fifth assignment of error is overruled. Accordingly, the Judgment of Conviction and Sentencing of the Court of Common Pleas, Allen County, Ohio is affirmed.
Judgment affirmed.
 PRESTON and WILLAMOWSKI, JJ., concur. r
[1] Testimony was given at trial that inositoc was found in Blandin's residence. It was described as an agent commonly used to dilute cocaine. This Court recognizes that this substance may be more commonly referred to as inositol, which is also used for the dilution of cocaine and methamphetamine. *Page 1