[Cite as *State v. Tatum*, 2011-Ohio-3005.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,                                    CASE NO. 13-10-18

   PLAINTIFF-APPELLEE,

 v.

ALI L. TATUM,                                     O P I N I O N

   DEFENDANT-APPELLANT.

Appeal from Seneca County Common Pleas Court
Trial Court No. 10-CR-0021

Judgment Affirmed

Date of Decision:  June 20, 2011

APPEARANCES:

   *Randy F. Hoffman* **for Appellant**

   *Rhonda L. Best* **for Appellee**

**ROGERS, P.J.**

{¶1} Defendant-Appellant, Ali Tatum, appeals from the judgment of the Court of Common Pleas of Seneca County sentencing him to a twenty-year prison term. On appeal, Tatum contends that the trial court erred as a matter of law by overruling his motion to dismiss the charges due to a violation of the speedy trial statute; that the trial court erred by overruling his motion to strike testimony and his motion for mistrial; that the trial court erred in denying his motions for acquittal; and, that the trial court erred in sentencing him to consecutive sentences for counts involving the possession of controlled substances. Based on the following, we affirm the judgment of the trial court.

{¶2} On February 3, 2010, the Seneca County Grand Jury indicted Tatum on Count One: possession of crack cocaine in an amount which exceeds twenty-five grams but is less than one hundred grams in violation of R.C. 2925.11(A),(C)(4)(e), a felony of the first degree; Count Two: possession of cocaine in an amount which exceeds twenty-five grams but is less than one hundred grams in violation of R.C. 2925.11(A),(C)(4)(c), a felony of the third degree; Count Three: possession of MDMA, a schedule one controlled substance, in an amount which exceeds the bulk amount but is less than five times the bulk amount in violation of R.C. 2925.11(A),(C)(1)(b), a felony of the third degree; Count Four: possession of BZP, a schedule one controlled substance, in an amount

which exceeds the bulk amount but is less than five times the bulk amount in violation of R.C. 2925.11(A),(C)(1)(b), a felony of the third degree; Count Five: possession of methamphetamine, a schedule two controlled substance, in violation of R.C. 2925.11(A),(C)(1)(a), a felony of the fifth degree; Count Six: possession of criminal tools in violation of R.C. 2923.24, a felony of the fifth degree; and, Count Seven: having a weapon while under disability in violation of R.C. 2923.13(A)(3), a felony of the third degree.  The foregoing indictment arose from a March 6, 2008 incident, where officers apprehended Tatum at a friend's residence, and discovered controlled substances, a digital scale, and a firearm, in a black bag which Tatum had carried into the residence.

{¶3} The State originally indicted Tatum on the foregoing counts in March 2008.  The State, however, dismissed the indictment without prejudice on May 13, 2008, as Tatum was taken into federal custody for violating parole.  Subsequently, Tatum was released from federal custody into a half-way house and was later arrested on charges unrelated to those at issue on this appeal.  As a result of that arrest a federal detainer was placed on Tatum.  In addition, the State reindicted Tatum for the alleged offenses which occurred on March 6, 2008.

{¶4} On March 24, 2010, Tatum filed a motion to dismiss the case based on a violation of his right to a speedy trial.  Specifically, Tatum argued that he had been held in jeopardy on the foregoing charges for more than two years, which far

exceeded the time period in which an accused must be brought to trial. The trial court, after it heard arguments on the motion during trial, denied Tatum's motion.

{¶5} On March 29, 2010, the matter proceeded to a jury trial, at which the following testimony was adduced.

{¶6} Officer Matthew Dickson testified that on the night of March 6, 2008, he attempted to conduct a traffic stop of a white SUV driven by Tatum.[1] Despite having engaged his overhead emergency lights, Tatum did not pull over. After an abbreviated chase, Tatum stopped the vehicle in front of a residence located at 211 Culbertson, that Officer Dickson later learned was inhabited by Tiffany Lee and Brent Lentz. Officer Dickson witnessed Tatum exit the SUV and pursued him towards the residence but was unable to apprehend him before he had entered the residence and locked the door. Subsequently, Officer Dickson returned to the SUV and found Lentz in the passenger seat. Officer Dickson placed Lentz in investigative custody and waited for back-up before he attempted to enter the residence.

{¶7} Officer Dickson continued that upon Officer Michael Cortez's arrival he and Officer Cortez attempted to enter the residence. During this time officers from the Fostoria Police Department had set a perimeter around the residence. Also, during this time Lentz placed a call to Lee, who was in the residence with Justin Jones, a visitor and Tatum's cousin, telling her to open the door. Shortly

---

[1] Officer Dickson testified that Tatum's traffic violation resulted from turning left into the outside lane rather than the lane closest to the center line.

thereafter, the door was unlocked. Upon entering the residence, Officers Dickson and Cortez placed Tatum in custody. As Officer Dickson entered the residence he also observed Lee on the sofa and Jones on the floor playing video games in the living room.

{¶8} Officer Dickson continued that Officer Cortez spoke with Lee and received verbal, as well as written, permission to search the residence. During his search of the kitchen Officer Dickson discovered a black bag on top of the refrigerator. Upon opening the bag Officer Dickson discovered what he perceived to be controlled substances. Officer Dickson communicated his discovery to Officer Cortez, who retrieved his evidence bag and documented the evidence. Further investigation of the black bag revealed the presence of a digital scale as well as a firearm. Officer Dickson further testified that neither he nor any other officer discovered any other black bags in the residence.

{¶9} At trial Officer Dickson testified about the contents of the video recorded by his police cruiser's dash mounted camera. The video captured an individual exiting the SUV, who Officer Dickson identified as Tatum, carrying a black bag.

{¶10} Officer Cortez testified that on the night of March 6, 2008, he responded to a call for assistance from Officer Dickson. Upon arrival, Officer Cortez observed Officer Dickson placing Lentz in custody, and learned that Tatum had locked himself inside the residence. As Officer Dickson attempted to gain

entry into the residence, Officer Cortez asked Lentz about the individuals inside the residence. Lentz responded that Lee, his girlfriend, Jones, and Tatum were in the residence. Officer Cortez asked Lentz if he would call Lee and ask her to unlock the door. Lentz agreed and called Lee. Officer Cortez then returned to the front door with Officer Dickson. Eventually, the door was unlocked, allowing Officers Dickson and Cortez to enter the residence and place Tatum in custody. In addition to observing Tatum in the residence Officer Cortez also testified that he observed another male and female in the residence, who he later identified as Jones and Lee.

{¶11} Officer Cortez continued that he smelled marijuana in the residence and asked Lee if officers could conduct a search of the residence. It was at this point Officer Cortez learned that Lee and Lentz were the sole inhabitants of the residence. Lee gave Officer Cortez permission to search the residence and signed a consent to search form. Prior to this point, Officer Cortez testified that the residence had not been searched. After receiving Lee's permission the officers conducted a search of the entire residence. During the search Officer Dickson directed Officer Cortez's attention to a black bag found in the kitchen. Upon entering the kitchen, Officer Cortez witnessed a black bag on the counter, and observed what he perceived to be controlled substances within the bag. Officer Cortez retrieved his evidence bag and began recording and conducting an inventory of the bag's contents. Officer Cortez also testified that the bag

contained a digital scale and a firearm. Officer Cortez further testified that no other officers who conducted a search of the residence on the night in question discovered any other black bags.

{¶12} Lee testified that on the night of March 6, 2008, she resided at 211 Culbertson with Lentz, and that no one else lived in the residence. On that night, Lee was at the residence with Jones, who was playing video games. Lee did not recall Jones carrying a bag into the residence when he arrived that day.

{¶13} Lee continued that at some point during the night in question Tatum entered the residence. Shortly thereafter police officers requested entry into the residence. Lee then received a phone call from Lentz requesting her to let the officers in, at which point Tatum opened the door. After the officers placed Tatum in custody, Lee testified that officers began to search the residence. Lee further testified that only after the officers began to search the residence did Officer Cortez request her permission to search the residence. Lee testified that Officer Cortez told her that she had to sign the consent to search form. Subsequently, an officer informed Lee about a black bag above the refrigerator in the kitchen. Lee testified that she did not keep anything on top of the refrigerator, nor did she or Lentz own a black bag.

{¶14} Lentz testified that on the night of March 6, 2008, he resided at 211 Culbertson with Lee, and that no one else lived in the residence. Lentz further testified that on the night in question, he was a passenger in a white SUV driven

by Tatum. During their drive a police cruiser attempted to pull them over, but Tatum did not stop until he reached 211 Culbertson. Tatum then exited the SUV and ran into the residence, while Lentz remained in the SUV. Lentz testified that as Tatum entered the residence he saw Tatum carrying a black bag. Subsequently, Lentz was placed in custody, and was asked to call Lee and have her open the door. After officers entered the residence Lentz was notified that a black bag was found on top of the refrigerator. Lentz testified that he did not keep anything on top of the refrigerator, nor did he or Lee own a black bag.

{¶15} Tatum testified that on the night of March 6, 2008, he was driving a white SUV, with Lentz as a passenger. At some point during his drive a police cruiser attempted to pull him over. Tatum testified that he did not stop because he did not have a license. Tatum further testified that he continued to 211 Culbertson so he could have Jones, his cousin, state that he was driving the SUV. Upon reaching 211 Culbertson Tatum exited the SUV carrying a black bag, which Tatum testified contained video games and controllers. Upon entering the residence Tatum testified that he locked the door and placed the black bag on the floor near Jones and the television with his coat on top. Tatum then explained his predicament to Jones, who did not want to be involved. During this time officers were requesting entry into the residence. After several minutes had elapsed from the moment the officers requested entry into the residence, Tatum opened the door and was placed in custody.

{¶16} Scott Dobransky, a forensic scientist with the Ohio Bureau of Criminal Identification and Investigation ("BCI & I"), testified about the substances given to him for analysis in Tatum's case. Dobransky was shown and asked to testify about State's exhibits 2A.1, 2A.2, 2A.5, 2A.8, and 2A.9. Dobransky testified that the foregoing exhibits wholly or partially contained BZP, a schedule one controlled substance, in an amount totaling forty unit doses. Dobransky was then shown and asked to testify about State's exhibits 2A.4, 2A.5, 2A.8, 2A.9, and 2A.11. Dobransky testified that the foregoing exhibits wholly or partially contained MDMA, a schedule one controlled substance, in an amount totaling twenty-two unit doses. As to the remaining substances found in the black bag, Dobransky testified that he identified crack cocaine in an amount that exceeded twenty-five grams but was less than one hundred grams, cocaine in an amount that exceeded twenty-five grams but was less than one hundred grams, and methamphetamine.

{¶17} At the conclusion of the State's case, Tatum's defense, and the presentation of all the evidence, Tatum moved for a judgment of acquittal pursuant to Crim.R. 29(A), arguing that the evidence was insufficient to establish that he had actual or constructive possession of the contents within the black bag and that the State failed to present enough evidence to prove that he possessed bulk amounts of MDMA and BZP. The trial court denied Tatum's motions.

Thereafter, the jury returned a verdict convicting Tatum on all seven counts of the indictment.

{¶18} On April 8, 2010, the matter proceeded to sentencing. The trial court sentenced Tatum to a nine-year prison term on Count One, a four-year prison term on Count Two, a four-year prison term on Count Three, a four-year prison term on Count Four, an eleven-month prison term on Count Five, an eleven-month prison term on Count Six, and a three-year prison term on Count Seven. The trial court further ordered that Counts Three, Four, Five, and Six be served concurrently, but consecutively to Counts One, Two, and Seven, which are to be served consecutively to each other, resulting in a total prison term of twenty-years.

{¶19} It is from this judgment Tatum appeals, presenting the following assignments of error for our review.

*Assignment of Error No. I*

**THE TRIAL COURT ERRED AS A MATTER OF LAW BY DENYING APPELLANT'S MOTION FOR DISMISSAL ON GROUNDS OF DENIAL OF SPEEDY TRIAL.**

*Assignment of Error No. II*

**THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S MOTIONS FOR STRIKING TESTIMONY AND FOR MISTRIAL.**

*Assignment of Error No. III*

**THE TRIAL COURT ERRED AS A MATTER OF LAW IN DENYING APPELLANT'S MOTIONS FOR ACQUITTAL AT THE END OF THE STATE'S EVIDENCE, THE**

**DEFENDANT'S EVIDENCE, AND AT THE END OF ALL THE EVIDENCE.**

*Assignment of Error No. IV*

**THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO CONSECUTIVE TERMS FOR ANY INDICTMENT COUNTS INVOLVING THE POSSESSION OF CONTROLLED SUBSTANCES.**

*Assignment of Error No. I*

{¶20} In his first assignment of error, Tatum contends that the trial court erred in denying his motion to dismiss on grounds that he did not receive a speedy trial, and that his right to due process of law was violated as a result of an indictment occurring two years after the commission of the offense. We disagree.

*Speedy Trial*

{¶21} "Our standard of review upon an appeal raising a speedy trial issue is to count the expired days as directed by R.C. 2945.71, et seq." *State v. King,* 3d Dist. No. 9-06-18, 2007-Ohio-335, ¶30, citing *State v. DePue* (1994), 96 Ohio App.3d 513, 516. If any ambiguity exists, this Court will construe the record in the defendant's favor. *King,* 2007-Ohio-335, at ¶30, citing *State v. Mays* (1996), 108 Ohio App.3d 598, 609.

{¶22} "Both the United States and Ohio Constitutions guarantee a criminal defendant the right to a speedy trial." *State v. Masters,* 172 Ohio App.3d 666, 2007-Ohio-4229, ¶9, citing *State v. Baker,* 78 Ohio St.3d 108, 110, 1997-Ohio-229. In addition, Ohio statutes set forth specific time requirements necessary for

compliance with the speedy trial guarantee. The applicable statutory speedy trial provision, R.C. 2945.71(C)(2), provides that "[a] person against whom a charge of felony is pending * * * [s]hall be brought to trial within two hundred seventy days after the person's arrest."

{¶23} Additionally, R.C. 2945.73(B) provides that "[u]pon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code." Both R.C. 2945.71 and 2945.73 are mandatory, and strict compliance is required by the State. *King,* 2007-Ohio-335, at ¶32, quoting *State v. Pudlock* (1975), 44 Ohio St.2d 104, 105. "Therefore, when a criminal defendant shows that he was not brought to trial within the proper period, the burden shifts to the State to demonstrate that sufficient time was tolled or extended under the statute." *State v. Maisch,* 173 Ohio App.3d 724, 2007-Ohio-6230, ¶24, citing *Masters,* 2007-Ohio-4229, at ¶10, citing *State v. Butcher* (1986), 27 Ohio St.3d 28, 31.

{¶24} "The statutory time period begins to run on the date the defendant is arrested; however, the date of arrest is not counted when computing the time period." *Maisch*, 2007-Ohio-6230, ¶26, citing *Masters,* 172 Ohio App.3d 666, at ¶12, citing *State v. Stewart*, 12th Dist. No. CA98-03-021, 1998 WL 640909. Additionally, the triple-count statute, R.C. 2945.71(E), provides that, for computation purposes, each day an accused spends in jail in lieu of bond solely on

the pending charge shall count as three days. *State v. Euton,* 3d Dist. No. 2-06-35, 2007-Ohio-6704, ¶24; *State v. Pishok*, 3d Dist. No. 13-03-43, 2003-Ohio-7118, ¶7, citing *State v. Brown* (1992), 64 Ohio St.3d 476, 479.

**{¶25}** The speedy trial time may be tolled in certain circumstances. One circumstance occurs when the original charges are dismissed without prejudice and the defendant is later reindicted, upon the same facts as alleged in the original indictment. *State v. Azbell,* 112 Ohio St.3d 300, 2006-Ohio-6552, ¶17, quoting *State v. Broughton* (1991), 62 Ohio St.3d 253. The time period between the dismissal and the date on which the new indictment was filed is tolled and shall not be counted, unless the defendant remained in jail or was released on bail pursuant to Crim.R. 12(I). Id. In that circumstance the speedy trial clock does not start anew with the reindictment, but continues from the point of dismissal of the original indictment. *State v. Byrd*, 8th Dist. No. 91433, 2009-Ohio-3283, ¶17.

**{¶26}** Turning to the facts of the case at bar, we find that the speedy trial period ran from Tatum's apprehension on March 6, 2008, to the State's dismissal of the original indictment on May 13, 2008. Because Tatum was detained during this period of time, the triple-count provision applied, thus exhausting 204 days of the speedy trial period. The period between the dismissal of the original indictment and Tatum's reindictment do not count towards the speedy trial period, thus we continue our calculation on the day Tatum was reindicted, which occurred on February 3, 2010.

-13-

**{¶27}** At the time Tatum was reindicted he was being held on unrelated charges and also had a federal detainer placed on him. Tatum baldly asserts that the unrelated charges were very weak and were returned for the sole purpose of avoiding the triple-count provision. Tatum, however, offers no evidence to support this assertion, and we find no evidence in the record to substantiate this assertion. Accordingly, we find that the triple-count provision does not apply to those days after February 3, 2010, since Tatum was not being held "in jail in lieu of bond *solely* on the pending charge[s]." See *State v. Freeman*, 8th Dist. No. 85137, 2005-Ohio-3480, ¶56, reversed on other grounds; *State v. Monroe*, 4th Dist. No.02CA23, 2003-Ohio-1709, ¶5; *State v. Donald*, 8th Dist. Nos. 81570, 83947, 2004-Ohio-6848. Tatum's trial commenced on March 29, 2010, thus exhausting another 55 days of the speedy trial period. Adding these days to the existing balance we find that only 259 days of the 270 day statutory period elapsed. Accordingly, we find that Tatum's right to trial within the statutory time period was not violated.

### *Delay in Indictment*

**{¶28}** Tatum also contends that the two-year delay between his initial arrest and the February 3, 2010 indictment violated his right to due process as it exacerbated his inability to locate Jones and obtain Jones' testimony. We disagree.

**{¶29}** The Ohio Supreme Court has held that "[a]n unjustifiable delay between the commission of an offense and a defendant's indictment * * * is a violation of the right to due process of law under Section 16, Article I of the Ohio Constitution and the Fifth and Fourteenth Amendments to the United States Constitution." *State v. Luck* (1984), 15 Ohio St.3d 150, paragraph two of the syllabus. In so holding, the Supreme Court set forth a two-step test to determine whether the defendant's right to due process was violated by the delay. First, the defendant must produce evidence demonstrating that the delay caused actual prejudice to his defense. *Luck,* 15 Ohio St.3d at 154. Then, after the defendant has established actual prejudice, the state must produce evidence of a justifiable reason for the delay. Id. at 158. "[T]he prejudice suffered by the defendant must be viewed in light of the state's reason for the delay." Id. at 154, citing *United States v. Lovasco* (1977)*,* 431 U.S. 783, 789-790.

**{¶30}** Review of the record reveals nothing that indicates Tatum made any attempt to locate Jones. Considering Tatum's statement that Jones would have offered crucial testimony, we would expect to see something in the record demonstrating an effort to locate Jones or to postpone the trial until Jones' whereabouts could be secured. Furthermore, on appeal, Tatum baldly asserts that Jones' testimony "had a significant potential for probative information." We find that this assertion, without more, is insufficient to establish actual prejudice. In

light of the foregoing, we find that Tatum failed to establish that he suffered actual prejudice as a result of the delayed indictment.

**{¶31}** Even if Tatum had established that he suffered actual prejudice, the State has offered evidence justifying the delay. The Ohio Supreme Court phrased this step as follows:

> **[A] delay in the commencement of prosecution can be found to be unjustifiable when the state's reason for the delay is to intentionally gain a tactical advantage over the defendant * * * or when the state, through negligence or error in judgment, effectively ceases the active investigation of a case, but later decides to commence prosecution upon the same evidence that was available to it at the time that its active investigation was ceased.**

*Luck*, 15 Ohio St.3d at 158.

**{¶32}** Tatum was originally indicted shortly after his arrest on March 6, 2008. Review of the record indicates that the original indictment was dismissed primarily because Tatum had been placed in federal custody for a parole violation. Accordingly, the State could not move forward with its prosecution while Tatum was in federal custody. Nearly two years passed before the State learned that Tatum had been released from federal custody and placed in a halfway house, at which point the State reindicted Tatum. Due to the foregoing series of events we find that the State did not intentionally delay prosecution of Tatum to gain a tactical advantage. Accordingly, we find that the Tatum's right to due process of law was not violated by the delayed indictment.

**{¶33}** Accordingly, we overrule Tatum's first assignment of error.

*Assignment of Error No. II*

**{¶34}** In his second assignment of error, Tatum contends that the trial court erred in denying his motion to strike testimony and his motion for mistrial. Specifically, Tatum contends that the trial court erred when it denied his motion to strike Lee's testimony concerning her consent to search the residence. Tatum also contends that the trial court erred when it denied his motion for mistrial, which stemmed from Lentz's testimony concerning Tatum's possession of the black bag. We disagree.

*Motion to Strike*

**{¶35}** An appellate court reviews the trial court's decision on the admission of evidence for an abuse of discretion. *State v. Heft,* 3d Dist. No. 8-09-08, 2009-Ohio-5908, ¶62, citing *State v. Issa,* 93 Ohio St.3d 49, 64, 2001-Ohio-1290. A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. See *State v. Boles*, 2d Dist. No. 23037, 2010-Ohio-278, ¶¶17-18, citing Black's Law Dictionary (8 Ed.Rev.2004) 11. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *State v. Nagle* (2000), 11th Dist. No. 99-L-089, 2000 WL 777835, citing *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

**{¶36}** Tatum contends that the State's questioning on redirect examination concerning the contents of the consent to search form amounted to prejudicial surprise, and should have been stricken from the record. We disagree.

**{¶37}** During trial, the State called Lee to the stand. At no time during Lee's testimony on direct examination was there any discussion or reading of the consent to search form signed by Lee on March 6, 2008. Instead, Tatum, on cross-examination, questioned Lee about the consent to search form, resulting in the following colloquy:

> **Q: So, uhm, did they indicate to you that they wanted to search your residence?**
>
> **A: No. They were just asking me where the drugs were.**
>
> **Q: Okay. Uhm, did they start searching your residence?**
>
> **A: Yes, immediately.**
>
> **Q: Did they have permission from you to search the residence?**
>
> **A: No. I remember when they were searching my residence and they were going through Ali's bag, uhm, Cortez had called me in to the bedroom, uhm, the first bedroom to the left, and I remember I could see the officers going through, uhm, the bag in the kitchen and then they were in the bedroom. There was another officer. They were everywhere, looking and - - and searching while he was showing me the search and seizure, he was trying to explain it to me. He told me that I had to sign it.**
>
> **Q: At some point did - - did you sign the form that allowed them to search?**
>
> **A: Yeah, he told me that I had to. I was naive. I didn't know. So, yeah. I signed it.**

-18-

Trial Tr., pp. 440-41. This line of questioning effectively opened the door for the State to rebut and clarify Lee's testimony, which it did through the following colloquy on redirect examination:

> **Q: Ms. Lee, I'd like you to read some sections here on State's Exhibit 36. Could you read the sentence here, "Knowing of my lawful rights"?**
>
> **Mr. Klepatz: Your Honor, I'm going to object.**
>
> **The Court: Overruled.**
>
> **Mr. Klepatz: I think that the - -**
>
> **The Court: Overruled.**
>
> **Mr. Klepatz: - - document stands for itself.**
>
> **The Court: I understand but it's been brought up. It's overruled.**
>
> **The Witness: "Knowing of my lawful right to refuse to consent to such a search, I hereby give my permission to above named officers to conduct a complete search of the premises, property, including all buildings, vehicles, both inside and outside of the property located." And, yes, I did sign this but - -**
>
> **Ms. Best: That's all I asked you.**
>
> **\* \* \***
>
> **Q: \* \* \* Could you also read the sentence right here?**
>
> **A. "This is written permission to search without a search warrant is given by me to above officers voluntarily, without any threats or promises of any kind."**

-19-

Trial Tr., pp. 447-48. We find the foregoing line of questioning does not amount to surprise as Tatum contends. Tatum opened the door on the subject during cross examination, thus affording the State an opportunity to rebut and clarify Lee's testimony concerning the consent form. Accordingly, we find that the trial court did not abuse its discretion in overruling Tatum's motion to strike Lee's testimony.

### *Motion for Mistrial*

{¶38} The granting or denying of a mistrial rests within the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 182, citing *State v. Williams* (1975), 43 Ohio St.2d 88. An appellate court will not disturb the exercise of that discretion absent a showing that the accused has suffered material prejudice. *State v. Long* (1978), 53 Ohio St.2d 91, 98; *State v. Hymore* (1967), 9 Ohio St.2d 122, 128, certiorari denied (1968), 390 U.S. 1024. The granting of a mistrial is only necessary where a fair trial is no longer possible. *State v. Holland*, 3d Dist. No. 1-2000-88, 2001-Ohio-2192, citing *State v. Franklin* (1991), 62 Ohio St.3d 118, 127.

{¶39} Tatum contends that Lentz's testimony contradicted the statements he made to Officer Cortez, which were reflected in Cortez's police report. According to Tatum, Cortez's report indicated that Lentz stated that he did not see Tatum with a black bag. As a result, Tatum argues that the discrepancy between

Lentz's statements in Cortez's report and Lentz's statements at trial materially affected his right to a fair trial, thus necessitating a mistrial. We disagree.

**{¶40}** Although there is a slight discrepancy between Lentz's statements in Cortez's report and his statements at trial, we find that Tatum was not prejudiced by this discrepancy. The purpose of having Lentz testify as to whether he witnessed Tatum with a black bag was to establish the fact that Tatum entered the residence with a black bag. This fact is crucial in demonstrating possession. However, Lentz's testimony was not uncorroborated, as the dash camera in Officer Dickson's police cruiser recorded Tatum exiting the vehicle carrying a black bag. We find that this evidence alone would have been sufficient for the trier of fact to find, beyond a reasonable doubt, that Tatum exited the vehicle and entered the residence with a black bag. We further note that the narrow issue before us is a discrepancy between one man's conflicting statements about whether Tatum entered the residence with a black bag. This type of discrepancy is best resolved by a jury, as it is an issue of fact (i.e. whether or not Lentz saw Tatum enter the residence with a black bag). For these reasons we find that the trial court did not abuse its discretion in denying Tatum's motion for mistrial.

**{¶41}** Accordingly, we overrule Tatum's second assignment of error.

*Assignment of Error No. III*

**{¶42}** In his third assignment of error, Tatum contends that the trial court erred in denying his motions for acquittal. Specifically, Tatum contends that the

-21-

State failed to prove that he had actual or constructive possession of the contents within the black bag found atop the refrigerator.[2] In addition, Tatum argues that the State failed to present evidence to prove that he possessed a bulk amount of MDMA and BZP. We disagree.

{¶43} Under Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 263. A motion for acquittal tests the sufficiency of the evidence. *State v. Miley* (1996), 114 Ohio App.3d 738, 742.

{¶44} When an appellate court reviews a record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Monroe,* 105 Ohio St.3d 384, 392, 2005-Ohio-2282, citing *State v. Jenks* (1981), 61 Ohio St.3d 259, superseded by state constitutional amendment on other grounds as stated in *State v. Smith,* 80 Ohio St.3d 89, 1997-Ohio-355. Sufficiency is a test of adequacy, *State v. Thompkins,* 78 Ohio St.3d 380, 386, 1997-Ohio-52, and the question of whether evidence is sufficient to sustain a verdict is one of law. *State v. Robinson*

---

[2] We find Tatum's argument concerning the State's failure to offer sufficient evidence to prove that he had possession of the black bag and its contents fails to include citations to authority and the transcript. App.R. 16(A)(7). Despite this lack of support and argument, in the interest of justice, we will address the merits of Tatum's contention.

(1955), 162 Ohio St. 486, superseded by state constitutional amendment on other grounds as stated in *Smith,* supra.

*Possession*

**{¶45}** The Revised Code defines "possession" as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). The issue of whether a person charged with drug possession knowingly possessed a controlled substance "is to be determined from all the attendant facts and circumstances available." *State v. Teamer,* 82 Ohio St.3d 490, 492, 1998-Ohio-193.

**{¶46}** Possession may be actual or constructive. See *State v. Haynes* (1971), 25 Ohio St.2d 264; *State v. Hankerson* (1982), 70 Ohio St.2d 87. For constructive possession to exist, the State must demonstrate that the defendant was able to exercise dominion or control over the item, even though the item may not be within his immediate physical possession. *State v. Wolery* (1976), 46 Ohio St.2d 316, 329; see also, *State v. Alexander,* 8th Dist. No. 90509, 2009-Ohio-597, ¶23; *State v. Messer* (1995), 107 Ohio App.3d 51, 56. Further, it must also be shown that the person was conscious of the object's presence. *Hankerson*, 70 Ohio St.2d at 91. Circumstantial evidence alone is sufficient to support a finding of constructive possession. *State v. Bray,* 8th Dist. No. 92619, 2009-Ohio-6461, ¶24, citing *State v. Jenks* (1981), 61 Ohio St.3d 259, 272-73, paragraph one of the

syllabus, superseded by state constitutional amendment on other grounds in *Smith,* supra.

**{¶47}** The evidence presented at trial was sufficient for the trier of fact to find that Tatum had possession of the black bag and its contents. The police cruiser's dash mounted video camera captured Tatum exiting the vehicle with a black bag. Lentz testified that he witnessed Tatum enter the residence with a black bag. Officer Cortez testified that the officers' search of the entire residence yielded only one black bag, which was located above the refrigerator. Both Lentz and Lee testified that they did not own a black bag, that they were not aware of any black bags in their residence prior to the officers' discovery of the bag in question, and that they did not store anything above the refrigerator. Lentz was shown State's exhibit one, the black bag in question, and was asked whether he recognized the bag as the one he saw in Tatum's possession when he entered the residence. Although Lentz could not definitively identify State's exhibit one as the bag he saw in Tatum's possession, he did testify that the bag was not his and that he never saw Lee or Jones in possession of the bag that evening. Lee also testified that she did not see Jones carrying a bag into the residence when he arrived on the day in question. Considering the foregoing evidence in its entirety, we find that there was sufficient evidence for a trier of fact to find, beyond a reasonable doubt, that Tatum possessed the bag in question, as well as the contents therein.

*Bulk Amount*

**{¶48}** Tatum contends that the State failed to present enough evidence to prove that he possessed an amount of MDMA and BZP that was more than bulk amount but less than five times bulk amount. In addition, Tatum further contends that the State did not sufficiently define 'bulk amount.' We disagree.

**{¶49}** We begin by noting that Tatum incorrectly suggests that the State had the burden of defining 'bulk amount.' Defining the term 'bulk amount' is a matter of law, not fact. Accordingly, the task of defining 'bulk amount' is solely within the province of the trial court. The State's burden is to demonstrate, through its evidence, that the defendant possessed the requisite quantity. Review of the record reveals that the trial court properly defined 'bulk amount' in its jury instructions, thus Tatum's contention lacks merit.

**{¶50}** R.C. 2925.01(D)(1)(c) defines 'bulk amount' for MDMA[3] and BZP[4] as:

> **(c) An amount equal to or exceeding thirty grams or *ten unit doses* of a compound, mixture, preparation, or substance that is or contains any amount of a schedule I hallucinogen other than tetrahydrocannabinol or lysergic acid amide, or a schedule I stimulant or depressant. [Emphasis Added.]**

**{¶51}** At trial the State called Dobransky, who testified about the substances found in the black bag and their amounts. Review of Dobransky's testimony reveals that analysis of the pills found in the black bag yielded a

---

[3] MDMA is a schedule I hallucinogen. See R.C. 3719.41, Schedule I(C).
[4] BZP is a schedule I stimulant. See R.C. 3719.41, Schedule I(E).

quantity that exceeded 10 unit doses of MDMA. Trial Tr., pp. 375-78. Further review of the Dobransky's testimony reveals that analysis of the pills found in the black bag yielded a quantity that exceeded 10 unit doses of BZP. Trial Tr., pp. 362-64. In light of the definition of 'bulk amount' and the foregoing testimony, we find that the State provided sufficient evidence for the trier of fact to find, beyond a reasonable doubt, that Tatum possessed an amount of MDMA and BZP that was more than bulk amount but less than five times bulk amount.

{¶52} Accordingly, we overrule Tatum's third assignment of error.

*Assignment of Error No. IV*

{¶53} In his fourth assignment of error, Tatum contends that the trial court erred in sentencing him to consecutive sentences, as the crimes of which he was convicted stemmed from the same act and thus were allied offenses. We disagree.

{¶54} In determining whether two or more offenses should be merged, the intent of the General Assembly is controlling. *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, ¶46. We determine the General Assembly's intent by applying R.C. 2941.25, which expressly instructs courts to consider the offenses at issue in light of the defendant's conduct. Id. Under R.C. 2941.25, the court must determine, prior to sentencing, whether the offenses were committed by the same conduct. Id. at ¶47. In so determining, the court should conduct the following analysis:

**"In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other. If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.**

**"If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., "a single act, committed with a single state of mind."** ***Brown,*** **119 Ohio St.3d 447, 2008–Ohio–4569, 895 N.E.2d 149, at ¶ 50 (Lanzinger, J., dissenting).**

**"If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.**

**"Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge."**

*Id.* at ¶¶48–51.

{¶55} Review of the foregoing analysis reveals that the conduct giving rise to the charges is not the only step in the analysis. First, the court must consider "whether it is possible to commit one offense *and* commit the other with the same conduct." In conducting this analysis the court must consider the provisions of the Revised Code that the defendant has allegedly violated.

{¶56} The pertinent portions of R.C. 2925.11 read as follows:

**(A) No person shall knowingly obtain, possess, or use a controlled substance.**

-27-

* * *

**(C) Whoever violates division (A) of this section is guilty of one of the following:**

**(1)  If the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule I or II, with the exception of marihuana, cocaine, L.S.D., heroin, and hashish, whoever violates division (A) of this section is guilty of aggravated possession of drugs. The penalty for the offense shall be determined as follows:**

**(b) If the amount of the drug involved equals or exceeds the bulk amount but is less than five times the bulk amount, aggravated possession of drugs is a felony of the third degree, and there is a presumption for a prison term for the offense.**

* * *

**(c) If the amount of the drug involved equals or exceeds twenty-five grams but is less than one hundred grams of cocaine that is not crack cocaine or equals or exceeds five grams but is less than ten grams of crack cocaine, possession of cocaine is a felony of the third degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the third degree.**

* * *

**(e) If the amount of the drug involved equals or exceeds five hundred grams but is less than one thousand grams of cocaine that is not crack cocaine or equals or exceeds twenty-five grams but is less than one hundred grams of crack cocaine, possession of cocaine is a felony of the first degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the first degree.**

{¶57} R.C. 2923.24 reads in pertinent part:

**(A) No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally.**

**{¶58}** R.C. 2923.13(A)(3) reads in pertinent part:

**(A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:**

**\* \* \***

**(3) The person is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been an offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.**

**{¶59}** Having considered the foregoing provisions and in light of the facts of the case at bar, we find that it is not possible to commit any one of the charged offenses and commit any of the other charged offenses with the same conduct. For instance, simultaneous possession of crack cocaine and cocaine are, pursuant to R.C. 2925.11, separate offenses. *State v. Delfino* (1986), 22 Ohio St.3d 270, at syllabus; *State v. Brown,* 3d Dist. No. 1-10-31, 2011-Ohio-1461, ¶41, *State v. Siefer*, 3d Dist. No. 5-09-24, 2011-Ohio-1868, ¶26, citing *State v. Crisp,* 3d Dist. No. 1-05-45, 2006-Ohio-2509, ¶22 (finding that the legislature intended there to be a distinction between crack cocaine and cocaine).

{¶60} Having found that the foregoing offenses are not allied, and thus are not required to be merged, we proceed to address whether the trial court erred in sentencing Tatum to consecutive sentences. An appellate court must conduct a meaningful review of the trial court's sentencing decision. *State v. Daughenbaugh,* 3d Dist. No. 16-07-07, 2007-Ohio-5774, ¶8, citing *State v. Carter,* 11th Dist. No.2003-P-0007, 2004-Ohio-1181. A meaningful review means "that an appellate court hearing an appeal of a felony sentence may modify or vacate the sentence and remand the matter to the trial court for re-sentencing if the court clearly and convincingly finds that the record does not support the sentence or that the sentence is otherwise contrary to law." *Daughenbaugh,* 2007-Ohio-5774, at ¶8, citing *Carter,* 2004-Ohio-1181, at ¶44; R.C. 2953.08(G). Having found that the offenses are not allied, we find that the trial court's decision to sentence Tatum to consecutive sentences was not contrary to law and thus was proper.

{¶61} Accordingly, we overrule Tatum's fourth assignment of error.

{¶62} Having found no error prejudicial to Tatum herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW and PRESTON, J.J., concur.**

**/jnc**