[Cite as *State v. McDonald*, 2023-Ohio-197.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO, CITY OF ZANESVILLE | : | JUDGES: |
| | : | Hon. Earle E. Wise, Jr., P.J. |
| | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | |
| -vs- | : | |
| | : | |
| CHASE MCDONALD | : | Case No. CT2022-0014 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Municipal Court,
                             Case No. 21TRC00628



JUDGMENT:                    Reversed and Vacated



DATE OF JUDGMENT:            January 24, 2023



APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

DAVID J. TARBERT                        BRIAN W. BENBOW
EMILY STRANG TARBERT                    265 Sunrise Center Drive
401 Market Street                       Zanesville, OH  43701
Suite 209
Zanesville, OH  43701

*Wise, Earle, P.J.*

{¶ 1}  Defendant-Appellant Chase McDonald appeals the decisions of the Zanesville Municipal Court denying his motion to dismiss on speedy trial grounds and his motion to suppress. Plaintiff-Appellee is the state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2}  This matter arose from a traffic stop conducted by Zanesville Police Department Patrolman Cody Dent on Friday April 2, 2021. At approximately 11:59 p.m. that day, Dent observed Appellant traveling on Maple Avenue, driving off the right side of the roadway and onto the sidewalk. Thereafter, Dent observed Appellant traveling left of center on two occasions. On one occasion a vehicle traveling in the opposite direction was forced to brake heavily to avoid colliding with Appellant's vehicle. After making these observations, Dent activated the overhead lights on his cruiser and initiated a traffic stop.

{¶ 3}  Patrolman Dent approached Appellant's vehicle and found Appellant was traveling alone. He additionally observed an empty alcoholic beverage can on the passenger side floorboard of the car. Appellant originally stated he was going to his aunt's house, but later stated he was going somewhere else. Dent noted Appellant's pupils were dilatated, his speech was slurred, and his movements and demeanor were lethargic. Appellant admitted to consuming alcohol several hours earlier. When asked for his driver's license Appellant first removed cash from his wallet, replaced it, then extracted his driver's license.

{¶ 4}  When Patrolman Dent asked for Appellant's insurance and registration Appellant requested permission to exit his vehicle to retrieve the documents from the passenger side glovebox. Dent permitted Appellant to do so and noted Appellant had

difficulty with balance, at one point stumbling on the sidewalk. Dent asked Appellant to perform field sobriety testing and breath or blood testing, but Appellant refused. He also initially refused to get into Patrolman Dent's cruiser after being placed under arrest. Appellant was subsequently charged with operating a vehicle under the influence of alcohol or drugs and resisting arrest by complaint filed in the Zanesville Municipal court on April 5, 2021.

{¶ 5}   On June 11, 2021 Appellant filed a motion to suppress. A hearing was originally scheduled for August 10, 2021 but then continued at the request of the state to September 9, 2021 and then again to September 30, 2021. The hearing was not held until October 26, 2021. On December 9, 2021, the trial court denied Appellant's motion to suppress.

{¶ 6}   On January 13, 2022, Appellant filed a motion to dismiss on speedy trial grounds. On January 31, 2022, the trial court denied the motion.

{¶ 7}   On February 2, 2022, following discussions with the state, Appellant pled no contest to operating under the influence and the state dismissed the charge of resisting arrest. The trial court ordered Appellant to pay a fine and costs, serve 30 days local incarceration with 27 days suspended, and a one-year license suspension.

{¶ 8}   Appellant filed a motion to stay sentence pending appeal and the trial court granted the same.

{¶ 9}   Appellant timely filed an appeal and the matter is now before this court for consideration. He raises two assignments of error as follow:

I

{¶ 10} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY FAILING TO DISMISS THE CHARGES AGAINST DEFENDANT/APPELLANT FOR FAILING TO FOLLOW THE STATUTORY SPEEDY TRIAL TIME CONSTRAINTS AND FOR FAILING TO AFFORD DUE PROCESS UNDER THE OHIO AND UNITED STATES CONSTITUTIONS. THE TRIAL COURT ACCORDINGLY ERRED AS A MATTER OF LAW BY DENYING APPELLANT'S MOTION TO DISMISS AS THE STATE FAILED TO PROSECUTE THIS CASE WITHIN THE SPEEDY TRIAL TIME LIMITS MANDATED BY R.C. §2945.71 ET SEQ."

II

{¶ 11} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY DENYING APPELLANT'S MOTION TO SUPPRESS."

Initial Matters

{¶ 12} We first address the city's argument that Appellant waived his right to appeal in his negotiated plea agreement.

{¶ 13} A plea agreement is contractual in nature and subject to contract law standards. *State v. Butts*, 112 Ohio App.3d 683, 685-686, 679 N.E.2d 1170 (1996). The elements of a contract include the following: an offer, an acceptance, contractual capacity, consideration (the bargained-for legal benefit or detriment), a manifestation of mutual assent, and legality of object and of consideration. *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16. A party asserting a contract must prove by a preponderance of the evidence the existence of the elements of the contract. *Cooper & Pachell v. Haslage*, 142 Ohio App.3d 704, 707, 756 N.E.2d 1248 (2001).

{¶ 14} The intent of the parties to a contract presumptively resides in the ordinary meaning of the language employed in the agreement. *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 509 N.E.2d 411 (1987). Contractual language giving rise to doubt or ambiguity must be interpreted against the party who used it. *Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 667 N.E.2d 949 (1996).

{¶ 15} Crim.R. 11(F) provides:

> Negotiated Plea Cases. When a negotiated plea of guilty or no contest to one or more offenses charged or to one or more other or lesser offenses is offered, the underlying agreement upon which the plea is based shall be stated on the record in open court. To the extent required by Article I, Section 10a of the Ohio Constitution or by the Revised Code, before accepting the plea, the trial court shall allow an alleged victim of the crime to raise any objection to the terms of the plea agreement.

{¶ 16} In support of its argument, the city points to the boilerplate-language plea waiver form which outlines the rights Appellant gave up by entering a plea of no contest. Among those rights was listed "My right to appeal the decision in this case." Docket at 15. The plea waiver form also states "no person has promised me any reward or leniency for entering this plea * * *" *Id.* The document is signed by both Appellant and his counsel.

{¶ 17} During the plea hearing, the following exchange took place:

The Court: * * * I know there's been a number of plea negotiations in this case. Can you bring me up to speed on what those are at this point?

[The City] Yes. The City moved to dismiss the resisting arrest charge, plead to the OVI; going to recommend 30 days; 27 suspended with the option for a driver's intervention program. Today $75, plus cost, a one-year license suspension, and then, plus $50 cost on the marked lanes and driving on the lawn charges.

The Court: On each?

[The City]: Yes.

The Court: All right. [Counsel for Appellant], is that your understanding of the plea negotiations?

[Counsel for Appellant]: It is. Thank you.

The Court: I'm looking at the last plea offer. There was an amendment. Is that not happening?

[Unknown Speaker]: No.

The Court: Okay. All Right. [Appellant], it's my understanding that upon a change of plea to operating a vehicle under the influence * * * a misdemeanor of the first degree, * * *, that the jointly recommended sentence is 30 days in jail; 27 would be suspended on the condition of no repeat offenses of a similar nature in the next two years; a $375 fine, plus costs, and a one-year drivers license suspension dated from the date of your arrest.

On Count B, for your plea for a marked lanes violation, a minor misdemeanor, and on Count C to your plea of driving on a lawn, a minor misdemeanor, each of those punishable – or a recommended sentence of a $50 fine. Is that our understanding of the plea negotiations [Appellant]?

[Appellant]: Yes.

The Court: Has there been anything else threatened or promised to you to make you want to change your plea here today?

[Appellant]: No.

The Court: And upon your plea to these charges, the charge of resisting arrest * * * would be dismissed.

You understand that those plea negotiations were had between your attorney and the law director's office. They are recommendations to me at the time of sentencing, which ultimately, I'm not required to follow. Do you understand that?

[Appellant]: Yes, sir.

{¶ 18} Transcript of plea, February 22, 2022, 3-5.

{¶ 19} The trial court then accepted Appellant's pleas of no contest, and sentenced Appellant as jointly recommended by the parties.

{¶ 20} The signed plea waiver does not accurately reflect what happened on the record. First, the record reflects that the bargain struck by the parties was for Appellant to plead to the most serious offense in exchange for the city dismissing one of the lesser

offenses. Contrary to the language of the plea waiver form, Appellant therefore did receive a "reward or leniency" in exchange for his plea. We further note that while the signed plea waiver form indicates Appellant would give up his right to appeal, no mention of the same is made by the city when asked to set forth the agreement on the record in compliance with Crim.R. 11(F).

{¶ 21} We find the state of the plea agreement was that which was placed on the record by the city during the plea hearing. Because there was no mention of Appellant waiving his right to appeal, we reject the city's argument that he did waive his right to appeal.

I

{¶ 22} In his first assignment of error, Appellant argues the trial court erred in denying his motion to dismiss on speedy trial grounds. Based on the state of the record in this matter, we agree.

Applicable Law

{¶ 23} Speedy-trial provisions are mandatory and are encompassed within the Sixth Amendment to the United States Constitution. The availability of a speedy trial to a person accused of a crime is a fundamental right made obligatory on the states through the Fourteenth Amendment. *State v. Ladd*, 56 Ohio St.2d 197, 200, 383 N.E.2d 579 (1978). "The statutory speedy trial provisions, R.C. 2945.71 et seq., constitute a rational effort to enforce the constitutional right to a public speedy trial of an accused charged with the commission of a felony or a misdemeanor and shall be strictly enforced by the courts of this state." *State v. Pachay*, 64 Ohio St.2d 218, 416 N.E.2d 589, syllabus (1980).

{¶ 24} A speedy-trial claim involves a mixed question of law and fact. *State v. Hickinbotham*, 5th Dist. Stark No. 2018CA000142, 2019-Ohio-2978, ¶ 26. As an appellate court, we must accept as true any facts found by the trial court and supported by competent, credible evidence. *Id*. With regard to the legal issues, however, we apply a de novo standard of review and thus freely review the trial court's application of the law to the facts. Id.

{¶ 25} In this matter the highest degree of offense charged is a misdemeanor of the first degree. When the highest degree of offense is a first or second-degree misdemeanor, R.C. 2945.71(B)(2) directs the offender must be brought to trial "[w]ithin ninety days after the person's arrest or the service of summons, if the offense charged is a misdemeanor of the first or second degree, or other misdemeanor for which the maximum penalty is imprisonment for more than sixty days."

{¶ 26} The statutory speedy-trial period begins to run on the date the defendant is arrested, although the date of arrest is not counted when calculating speedy-trial time. *State v. Wells*, 8th Dist. Cuyahoga No. 98388, 2013-Ohio-3722, ¶44, citing *State v. Tatum*, 3d Dist. Seneca No. 13-10-18, 2011-Ohio-3005. Once the statutory time limit has expired, the defendant has established a prima facie case for dismissal. *State v. Butcher*, 27 Ohio St.3d 28, 30-31, 500 N.E.2d 1368 (1986). The burden then shifts to the state to demonstrate that sufficient time was tolled pursuant to R.C. 2945.72. *Brecksville v. Cook*, 75 Ohio St.3d 53, 55-56, 661 N.E.2d 706 (1996). If the state has violated a defendant's right to a speedy trial, then the court must dismiss the charges against the defendant. R.C. 2945.72(B).

{¶ 27} Speedy trial time is tolled by those events listed in R.C. 2945.72. These events include "[a]ny period of delay necessitated by reason of a * * * motion * * * made or instituted by the accused," under R.C. 2945.72(E), or during "[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion," under R.C. 2945.72(H).

{¶ 28} When reviewing a speedy trial question, an appellate court must count the number of delays chargeable to each appellant and appellee. Next, the appellate court must determine whether the number of days not tolled exceeded the time limits under R.C. 2945.71. *State v. Ferrell*, 8th Dist. Cuyahoga No. 93003, 2010-Ohio-2882, ¶20. When reviewing legal issues presented in a speedy trial claim, we must strictly construe the relevant statutes against the state. *Brecksville v. Cook*, 75 Ohio St.3d 53, 57, 661 N.E.2d 706, 709 (1996); *State v. Colon*, 5th Dist. Stark No. 09-CA-232, 2010-Ohio-2326, ¶12.

Speedy Trial Principles as Applied to the Instant Matter

{¶ 29} The parties agree that the state had 90 days in which to bring Appellant to trial. While the parties and the trial court appear to begin their speedy calculations on April 5, 2021, the statutory speedy trial period begins to run on the date the defendant is arrested, although the date of arrest is not counted when calculating speedy trial time. In this matter April 3, 2021 is the day after Appellant's arrest.

{¶ 30} On April 16, 2021, counsel for Appellant filed a notice of appearance, a demand for discovery, and a request for a pretrial for Friday May 14, 2021. Neither the record nor the docket contains any indication the City responded to Appellant's request for discovery, or that the pretrial took place on the requested date.

{¶ 31} On June 11, 2021, counsel for Appellant filed a motion to suppress. The docket indicates a hearing was set for August 5, 2021.

{¶ 32} On July 28, 2021, the docket indicates the August 5, 2021 suppression hearing was cancelled and continued to August 10, 2021. There is no judgment entry reflecting this continuance contained in the record, nor who the continuance was charged to.

{¶ 33} On August 6, 2021, the docket indicates the August 10, 2021 suppression hearing was cancelled and continued to September 9, 2021. Again, there is no judgment entry reflecting this continuance contained in the record, nor who the continuance was charged to. At this point, more than 90 days had elapsed and Appellant established a prima facie case for dismissal.

{¶ 34} On August 31, 2021, counsel for Appellant filed a motion to continue the suppression hearing. The trial court granted the motion the same day and continued the hearing to September 9, 2021.

{¶ 35} On September 7, 2021 the trial court issued a judgment entry indicating the suppression hearing was continued to September 30, 2021 at the request of Appellant.

{¶ 36} According to the transcript of the suppression hearing, the hearing took place on October 26, 2021. However, there is no indication in the record or on the docket as to any request for a continuance from the September 30, 2021 date, or which party requested the continuance.

{¶ 37} On December 9, 2021, the trial court denied Appellant's motion to suppress. On the same day, Appellant, represented by new counsel, filed a motion for discovery

and a motion for specific discovery. Again, there is no indication in the record to indicate the state ever responded with Appellant's request for discovery.

{¶ 38} On January 13, 2022, counsel for Appellant filed a motion to dismiss on speedy trial grounds.

{¶ 39} As noted above, when reviewing legal issues presented in a speedy trial claim, we must strictly construe the relevant statutes against the state. *Brecksville v. Cook*, 75 Ohio St.3d 53, 57, 661 N.E.2d 706, 709 (1996); *State v. Colon*, 5th Dist. Stark No. 09-CA-232, 2010-Ohio-2326, ¶12. Further, while we must accept as true any facts found by the trial court, those facts must be supported by competent credible evidence. *State v. Hickinbotham*, 5th Dist. Stark No. 2018CA000142, 2019-Ohio-2978, ¶ 26.

{¶ 40} On the face of the record, speedy trial time had expired before Appellant's suppression hearing was ever heard. And as the foregoing demonstrates, the record is missing information important to determine otherwise. This includes the lack of any response by the state to Appellant's two requests for discovery and any judgment entry stating which party requested the July, 28, 2021, August 6, 2021, and October 2021 continuances. While the parties briefs and the judgments appealed from provide some clues pertaining to the missing documents, there are no judgment entries or discovery receipts in the record to support those alleged facts. It is the state's burden to demonstrate Appellant was timely brought to trial. The state cannot do so based on the record before this court.

{¶ 41} Appellant's first assignment of error is sustained.

II

{¶ 42} Given our resolution of Appellant's first assignment of error, his second assignment of error is moot.

{¶ 43} The judgment of the Zanesville Municipal Court is reversed and Appellant's convictions are vacated.

By Wise, Earle, P.J.

Gwin, J. and

Baldwin, J. concur.

EEW/rw